# ALLEN *v.* PULLMAN'S PALACE CAR COMPANY.

## SAME *v.* SAME.

**APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.**

Nos. 1381, 1382.   Argued March 16, 1891. — Decided April 13, 1891.

Purely injunction bills cannot be maintained to restrain the collection of taxes upon the sole ground of their unconstitutionality. *Shelton* v. *Platt*, 139 U. S. 591, affirmed and applied.

When in a suit in equity this court finds, on examining the proofs, nothing which makes a proper case for equity, it is its duty to recognize the fact, and give it effect though not raised by the pleadings, nor suggested by counsel.

IN EQUITY.   The case is stated in the opinion.

*Mr. G. W. Pickle,* Attorney General of the State of Tennessee, for appellant.

*Mr. Edward S. Isham* and *Mr. John S. Runnells* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

These were bills filed in the Circuit Court of the United States for the Middle District of Tennessee against the comptroller of that State, for an injunction restraining him from the collection from complainant of certain privilege taxes or license fees for the years 1887, 1888 and 1889, under laws of the State of Tennessee in that behalf, which complainant averred to be in conflict with the Federal and state constitutions, and the taxes accordingly illegal and void.

In No. 1381, the bill alleged that the comptroller was threatening to issue his warrant for the collection of the taxes and to levy it upon complainant's sleeping cars, "and your orator believes and fears that said defendant, unless

restrained by this honorable court, will proceed to force the collection of said tax so illegally assessed and claimed, by distraining and seizing upon your orator's cars from your orator, and that the proceedings threatened for the collection of said taxes will lead to a multiplicity of suits and will greatly harass your orator. Your orator further shows that all the sleeping and drawing-room cars aforesaid, running in the State of Tennessee, are attached to through express trains on the roads of said railroad companies; that prior to their arrival in Tennessee seats and sleeping berths therein have always been sold by your orator to persons travelling from other States into Tennessee; that your orator has at all times contracts with passengers to give them the accommodations furnished by said cars while travelling upon such railroads; that unless your orator pays the taxes so illegally imposed upon it, your orator believes and fears that said defendant will, unless restrained therefrom by this court, levy upon and seize, in order to force from your orator said illegal taxes, said sleeping and drawing-room cars while the same are in actual use and running attached to said express trains; that thereby the travelling public will be discommoded, the carriage of passengers interstate will be prevented, your orator and said railroad companies may become harassed by many suits for damages by passengers for not furnishing them the accommodations they contracted for, the credit and reputation of your orator for furnishing comfortable accommodations, which credit and reputation are of great value to it and have been established by strict attention to business and at great expense and trouble for many years, will be broken up, and the good will of said business greatly impaired, and thereby your orator will suffer great and irreparable injury."

In No. 1382 complainant averred that the comptroller had issued his warrant to the sheriff of the county of Davidson, Tennessee, and the sheriff by his deputy, one Hobson, "has, by force, and pretending to act under said warrant, seized upon the sleeping car 'Wetumpka,' belonging to your orator, and now holds the same in their possession; that said car is reasonably worth $8000; that said Hobson has advertised

and threatens to sell said car to satisfy said illegal and pretended tax. That said sleeping car of your orator when seized was being used by your orator in the carrying on of interstate commerce as aforesaid, and was in use as an instrument of interstate commerce and was in Tennessee only by virtue of such use, and was therefore not liable to be taken in satisfaction of said tax, even if it had been a valid tax. That the railroad companies over whose lines of road your orator operates cars are common carriers, and are obliged by law to take upon their trains and carry all who properly present themselves for carriage whether they are travelling between points wholly within Tennessee or not; that such passengers, travelling locally in Tennessee, sometimes apply for sleeping-car accommodations in your orator's cars attached to such train, and, if your orator is obliged to receive them on its cars, then the State of Tennessee by such tax act forces your orator to pay such privilege tax and take out such license or to cease carrying on the interstate commerce in which it is now engaged. That said defendants have demanded said three thousand dollars from your orator, and have declared that they will force your orator to pay the same; that they now threaten to sell said car so seized by them, and your orator believes will do so unless restrained by this honorable court; that said car is very valuable, but will not bring its full value at a forced sale, and your orator fears that it will be sold for a small amount not sufficient to pay said tax, and your orator believes and fears that said defendants, unless restrained by this honorable court, will thereupon proceed to enforce the collection of said tax so illegally claimed, by distraining and seizing upon your orator's other cars, and that the proceedings threatened by defendants for the collection of said taxes will greatly harass your orator. Your orator further shows that all its sleeping cars aforesaid running through the State of Tennessee are attached to through express trains on the roads of the said railroad companies; that prior to their arrival in Tennessee seats and berths have always been sold by your orator to persons travelling from other States into Tennessee; that your orator has at all times contracts with passengers to

give them the accommodations furnished by said cars while travelling upon said roads; that unless your orator pays the taxes so illegally imposed upon it your orator believes and fears that the said defendants will, unless restrained therefrom by this court, sèll said car so already levied on, and, if it does not bring enough to satisfy said tax, will levy upon and seize, in order to force from your orator said illegal tax, its sleeping cars while they are in actual use and running attached to said express trains; that thereby the travelling public will be discommoded, the carriage of passengers interstate will be prevented, your orator and said railroad companies may become harassed by many suits by passengers for damages for not furnishing them the accommodations they contracted for; the credit and reputation of your orator for furnishing comfortable accommodations, which credit and reputation are of great value to it and have been established by strict attention to business and at great expense and trouble for many years, will be broken up, and the good will of said business greatly impaired, and thereby your orator will suffer great and irreparable injury."

The bills prayed for injunction and general relief. Answers and replications were filed and some evidence taken, but nothing appears in the pleadings or proofs bearing upon the question of the standing of complainant in a court of equity, except as indicated by the averments of the bills above quoted. Upon hearing, the relief sought was decreed and the taxes in question perpetually enjoined.

We have already decided in *Shelton* v. *Platt, ante,* 591, that purely injunction bills cannot be sustained to restrain the collection of taxes upon the sole ground of their unconstitutionality. The jurisdictional averments are more comprehensive in these causes than in that, but we are of opinion that they did not make out a case for equity interposition, for the reasons there given, and in view of the act of Tennessee of 1873, entitled "An act to facilitate the collection of revenues," approved March 21, 1873. Laws Tenn. 1873, c. 44, p. 71.

So far as appeared, complainant could avert all the consequences which it deprecated as likely to ensue if the state

officials were not restrained, by complying with the terms of that statute and availing itself of the remedy thereby afforded. *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34.

There is, however, this marked distinction between *Shelton* v. *Platt* and these cases. In *Shelton* v. *Platt* the objection to the jurisdiction was asserted by motion, by plea and by the answer. Here that objection is urged apparently for the first time in this court, but inasmuch as the entire record fails to show complainant entitled to an injunction within the rule announced, the decrees must nevertheless be reversed. It is true that there was a prayer for general relief, but relief given under the general prayer must be agreeable to the case made by the bill, and in this instance the complainant sought a preventive remedy only.

Ordinarily, where it is competent for the court to grant the relief sought, and it has jurisdiction of the subject matter, the objection of the adequacy of the remedy at law should be taken at the earliest opportunity and before the defendant enters upon a full defence. *Reynes* v. *Dumont*, 130 U. S. 354; *Kilbourn* v. *Sunderland*, 130 U. S. 505; *Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530. But in *Lewis* v. *Cocks*, 23 Wall. 466, it was held that if the court, in looking at the proofs, found none of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact and give it effect, though not raised by the pleadings nor suggested by counsel. *Parker* v. *Winnipiseogee Woollen Co.*, 2 Black, 545; *Oelrichs* v. *Spain*, 15 Wall. 211; *N. Y. Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205.

*The decrees are reversed, and the causes remanded for further proceedings in conformity with this opinion.*

MR. JUSTICE HARLAN and MR. JUSTICE BROWN dissented.