BUFFINGTON, District Judge.
On December 18, 1894, Eliza Erskine, a citizen of tbe state of Ohio, filed this bill in equity against the Forest Oil Company, a corporation of the state of Pennsylvania, setting forth, inter alia, that William Crawford died in 1846, and by his will bequeathed a certain farm in Washington county, Pa., to his son Matthew Crawford and to his children; that Matthew died on September 30, 1894, and the complainant was one of his 13 children; and that since his death the respondent company entered on said farm, and took possession of four producing oil wells, and of the oil since produced therefrom. The bill prayed first for an injunction to restrain respondent from entering on the premises, from interfering with the wells, from carrying away the oil or removing any machinery, tools, or fixtures from the premises. It also prayed for a receiver, for an account, discovery, and general relief. The contention of complainant is that by the will Matthew Crawford took an estate for life only, with remainder to his then and after born children. The answer alleged the will vested no estate whatever in the children, but did vest the fee in Matthew; that on the death of his father, Matthew accepted the devise, entered into and retained sole and exclusive possession of the farm until March 20, 1892, when the Woodland Oil Company entered thereon to operate for gas and oil, as assignee of a lease made by Matthew Crawford on December 4, 1890, for it and 33 acres adjoining, to T. J. Vandergrift, in consideration of $500 cash and one-eighth of the oil to be produced thereon for three years, or “as much longer as oil and gas is found in paying quantities thereon”; that Matthew Crawford, at the time of giving the lease, claimed to be the sole and absolute owner of the premises; that the company began drilling a well about March 20, 1S92, and obtained oil in paying quantities about June 24, 1892; that between then and November 8, 1894, it drilled three other wells, all of which produced and are likely to produce oil for some time; that in said operations it had expended $30,000; that Matthew Crawford, up to the time of his death, received his one-eighth royalty; that on November 27, 1894, the Woodland Company assigned the leasehold to the respondent company; that since the death of Matthew Crawford the royalty has been run to a suspense account in the pipe line, because the heirs or devisees of Matthew Crawford could not agree to whom it was coming. It also alleged complainant had full knowledge of the lease and the operations thereunder, that she never made any objections, that the bill shows no case for equity, and prays such benefit as though the bill were demurred to. On April 22, 1895, petitions for intervention as parties complainant were filed by five other children of Matthew Crawford and the children of a sixth one, deceased, and the same day, on motion of complainants’ counsel, no objection being made by respondent, it was ordered “that the said petitioners, and each of them, have leave, and leave is hereby granted to them, to intervene in this suit for their own interests and the interests of those whom they represent, and to that end to appear in the suit in the same manner and with like *585 effect as if they were named in the original bill as plaintiffs haying or claiming an interest in the matter therein in controversy.”
Assuming, for present purposes, that, by the will of his father, Matthew Crawford took a life estate in the land, and his children took in remainder, and assuming the jurisdiction of the court is not ousted by the intervention of the additional parties, whose residence or citizenship is not stated, and who represent separate undivided interests in the land other than that of Mrs. Erskine, the original complainant, the paramount question still remains, is the case one of equitable jurisdiction? Assuming the complainants took in remainder the undivided seven-thirteenths of the land, yet the filing of the bill found the respondent in sole, exclusive, and adverse possession of it under claim of title, and such possession dating back to a time prior to the right of entry of complainants, and the alleged title having its origin in the grant of the holder of a prior freehold estate, namely, Matthew Crawford, the life tenant. While the bill does not, in words, pray to acquire possession of the wells, yet in substance and effect that is its purpose. It seeks to restrain respondent from operating the wells or taking the oil, and these acts are, where oil and gas are concerned, the essential attributes of possession. The supreme court of Pennsylvania, in the case of Gas Co. v. DeWitt, 130 Pa. St. 250, 18 Atl. 724, after discussing the peculiar character of gas and oil and their production, say: “The one who controls the gas [the subject-matter of the case before it]—has it in his grasp, so to speak—is the one who has possession in the legal as well as in the ordinary sense of the word'.” A bill, then, which in substance would deprive one in possession of everything whieh constitutes possession, whatever it is in name, is in fact one to- divest possession, or what is known as an “ejectment bill.” In Messimer’s Appeal, 92 Pa. St. 169, a bill was filed by parties claiming an undivided fourth in an oil lease and well against parties in possession. The respondent admitted complainants’ title to an undivided eighth, and denied it as to the other eighth. Complainants did not ask to restrain respondent from operating the well, but prayed for a receiver and an accounting. In sustaining a decree dismissing the bill for want of grounds of equitable relief, the court say: “The case presented on bill and answer is simply the ordinary case of property claimed by one party (plaintiff) in the possession of another party (defendant). It is a mere ejectment bül, and there is nothing to give a court of equity jurisdiction.” Such conclusion is in accord with other Pennsylvania cases. See Long’s Appeal, 92 Pa. St. 179; Coal Co. v. Snowden, 42 Pa. St. 488; Gloninger v. Hazard, Id. 389. In the federal courts the line between law and equity, and consequently between legal and equitable rights and remedies, has been sharply defined, and strictly observed. The provision of the constitution vesting judicial powers “in cases in law and equity * * * between citizens of different states” recognizes the distinction. A constitutional amendment insures the right of trial by jury “in suits at common law when the value in controversy ■shall exceed twenty dollars,” and the sixteenth section of the judiciary act of 1789 provides “that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, ade *586 quate, and complete remedy may be had at law.” And to such length have these provisions been extended that it has been held (Allen v. Car Co., 139 U. S. 662, 11 Sup. Ct. 682): “If the court, in looking at the proofs, found none of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact, and give it effect, though not raised by the pleadings nor suggested by counsel.” And rightly so, for we are here dealing with the constitutional right of the citizen, and, as was said by Mr. Justice Campbell in Hipp v. Babin, 19 How. 278, “whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.”
Applying that principle to the case in hand, what have we? There can be no doubt that the title claimed by Mrs. Erskine is a purely legal one. There is no trust relation between her and the respondent. She need call to her aid no equitable principles to establish or enforce her title. If it exists, it is created wholly and solely by a written instrument accessible to all parties. Being purely legal, as distinguished from equitable, it can be established and enforced in a court of law. Nor are any special grounds for equity interference shown; there are no complicated accounts; and, moreover, the liability to account at all is incidental to and dependent upon the prior question of title. Discovery is prayed for in the bill. But, apart from the fact that the proofs disclose no call for such relief, it is to be noted that ordinarily discovery is not an independent ground of relief, but is incidental to and dependent on other grounds. Hare, Disc. §§ 6— 8, and Story, Eq. Pl. § 331. Nor can- the bill be sustained on the ground of avoiding a multiplicity of actions. Certain it is the original complainant was entitled to maintain ejectment for her undivided interest, and the act of April 13, 1807 (1 Brightly’s Purd. Dig. p. 636, § 4), nrovides for the joinder of tenants in common in actions of ejectment in this state. Nor is the taking of the oil from the wells, under the facts of this case, to be adjudged such an irreparable injury as in some cases might warrant the interference of a court of equity by injunction. The respondent is concededly solvent, and the proofs tend to show that by the taking out of the oil on this tract it is, prevented from being drawn away and taken out by other wells on adjoining lands. Moreover, in pending actions of ejectment the Pennsylvania statutes provide, by writ of estrepement, for all protection of land in litigation from spoliation.
After careful consideration, we are of opinion complainants’ title is wholly a legal one, that ample remedy exists at law, that there are no special facts or circumstances in this case calling for the exercise of equitable jurisdiction, and that the bill is an ejectment one. With a disposition on our part to, if possible, retain jurisdiction to dispose of the case by construing the will, and end the controversy between the parties, we are unable to do so. The cases of Hipp v. Babin, 19 How. 278, Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, and others that might be referred to, block the way to a federal court assuming jurisdiction of what is in substance and real purpose an eject* *587 ment bill. If our conclusion in this regard is correct, the construction of the will of William Crawford must be passed upon in another case, and the propriety of our abstaining from any expression of our views thereon is apparent. A decree will be prepared dismissing this bill for want of jurisdiction, and without prejudice.