Mr. Chief Justice Alvey
delivered the opinion of the Court:
By the act of Congress of May 26, 1900, under which the permit in question was granted, it is provided that the Commissioners of the District of Columbia are authorized to grant permission to lay conduits for the transmission of electric power, and pipes for the transmission of steam, in alleys in the District of Columbia, under the following conditions, namely:
(1) The conduits or pipes shall be laid entirely within a square or block, and shall not cross or enter any avenue, street or highway.
(2) The conduits and pipes shall be located as directed *363 by the Commissioners, and be laid under their inspection; and the cost of such inspection, together with the cost of repaving all improved pavements disturbed in connection with said work, shall be paid in advance by the party desiring to lay said conduits or steam pipes.
(3) The conduits or pipes shall be used only to connect the premises owned and operated by the permittee, and no power or steam shall be supplied therefrom for any other purpose than the use of the permittee.
(4) The permittee shall not rent the conduit or pipe or any portion thereof.
By section 2 of the act it is provided, that on violation of any of the above provisions or restrictions, the Commissioners shall require the permittee, after thirty days’ notice, to abandon the use of said conduits or pipes and remove them from the alley or alleys, in which they are located, and if said permittee shall neglect or refuse to remove said conduits or pipes and place the surface of the alley in good condition within thirty days after the date of said notice, the said permittee shall be deemed guilty of a misdemeanor, and shall be liable to a fine of ten dollars for each and every day that said conduits or pipes are allowed to remain in the alley, or the said alley shall remain out of repair, which fine shall be recovered in the police court of said District, in the name of said District, as other fines and penalties are now recovered in said court. And the third section of the act provides, that Congress shall have the right to alter or repeal the act at pleasure.
The permit granted to the Dewey Hotel Company, was to construct an electric conduit and to lay pipes for the transmission of steam, in alley, square 248, from Dewey Hotel to premises Nos. 1008, 1010 and 1012 Thirteenth street, N. W. The permit was explicit in declaring that it was given subject to all the provisions of the act of Congress of May 26, 1900, regulating permits for private conduits in the District of Columbia.
*364 There is nothing apparent on the face of the permit to show that any of the conditions or restrictions of the statute had been violated, or were authorized to be violated, in the issuance of the permit; and if there has been any such violation, it must be in the use or application of the permit by the holders thereof to premises within the prohibition of the statute. The act of Congress authorizing the granting of the permit has prescribed the penalty, and the mode and manner of trial and punishment, for the violation of any of the provisions and restrictions of the act. There is, therefore, no want of legal remedy for the violation of the statute. Why, then, should the jurisdiction of a court of equity be invoked? It is doubtless true, as decided by many cases, that a court of equity will sometimes, under special circumstances, interpose to prevent the municipal authorities from transcending, or from making an illegal use of, their powers, and relieve against their unauthorized or illegal acts. But this is on the established principle, that there must be some reason to justify a resort to the equity jurisdiction, such as the want of an adequate remedy at law, multiplicity of suits, irreparable injury, breach of trust, or the like. This general doctrine would seem to admit of no exception, with the qualification just stated; and it has been maintained by the highest authority. Mayor of Brooklyn v. Meserole, 26 Wend. 132; Mooers v. Smedley, 6 John. Ch. 28; Dows v. Chicago, 11 Wall. 108. Indeed, as said by the Supreme Court of the United States, in the case last cited, “this upon principle must be the case. The equitable powers of the court can only be invoked by the presentation of a case of equitable cognizance. There can be no such case, at least in the Federal courts, where there is a plain and adequate remedy at law.” The question whether municipal and public corporations are acting, or have acted, within the limits of the authority which the law confers upon them involves an examination of purely legal principles, unmixed with *365 equity. Therefore, in general, a court of equity has no jurisdiction to restrain, review, or set aside, even if irregular or illegal, the proceedings of such corporation. This jurisdiction belongs, except in very special cases, to the supervisory powers and control of the courts of common law. 2 Dill. Mun. Corp., Sec. 907; Hannewinkle v. Georgetown, 15 Wall. 547.
Therefore, if upon review of the case as presented by the complainant it appeal’s that there is nothing in the case that justifies the exercise of equity jurisdiction, or to grant an injunction, it is the duty of the court to recognize the fact, and to give it effect, even though the question were not raised in the pleading nor suggested in the argument of counsel. Allen v. Pullman Palace Car Co., 139 U. S. 658, 662. In this case, however, the question of the jurisdiction of the court is raised both in the pleading and the argument of counsel. And the answers of the defendants under oath, though neither required to be under oath nor the oath waived by the bill, may be used as evidence in favor of the defendants, and will be taken as conclusive, if not contradicted by evidence in the case. Conley v. Nailor, 118 U. S. 127.
The plaintiff wholly fails to show any ground upon which it can rightfully claim relief of a court of equity. The fact that it has a large amount of capital invested in the establishment and maintenance of an electric.lighting plant in the city of Washington, certainly furnishes no ground for the exercise of equity jurisdiction; nor does the allegation that the complainant is a taxpayer in the District furnish such ground for relief. The complainant does not allege, or attempt to show, that by reason of the granting and execution of the license or permit to the Dewey Hotel Company, it will be injured or wronged in its character as a taxpayer. The principle is certainly well settled, that a taxable inhabitant may resort to a court of equity to have restrained a municipal corporation, or its officers, from transcending their lawful powers, or from violating their legal *366 duties, in any manner which will injuriously affect the taxpayers, such as making an unauthorized appropriation of the corporate funds, or an illegal disposition of the corporate property. The principle has been clearly enunciated by the Supreme Court of the United States, in the case of Crampton v. Zabriskie, 101 U. S. 601, 609. In that case the court said, speaking by Mr. Justice Field: “Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. 'The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the taxpayers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property holders.” And in support of the doctrine thus laid down, the learned justice refers to the work of Judge Dillon, on Municipal Corporations.
In this case, there was nothing done, or proposed to be done, that could create burdens upon the taxpayers; for it is fully shown in the answer of the Commissioners that money more than sufficient was placed on deposit, by the Dewey Hotel Company, to restore and keep in repair the alley, after laying the conduits and pipes therein. The mere fact of being a taxpayer, therefore, confers no right to maintain this bill. Nor does the allegation that the complainant has a contract with defendant Fenwick for the exclusive supply of light and steam to be used in the premises Nos. 1010 and 1012 Thirteenth street, N. W., for the period of one year from July 9, 1900, afford any right *367 to maintain this bill. That allegation is denied by Fenwick in his answer, and it is also denied in the answer of the Dewey Hotel Company. But if the allegation were conceded to be true, it would not alter the case. If there be any violation of such contract as that alleged with Fen-wick, the remedy would be at law, not in equity.
All other grounds alleged for equitable relief being insufficient, the present bill must be supported, if supported at all, upon the ground that the laying of the conduits and pipes in the public alley, in square No. 248, one of the public ways of the city, constitutes a public nuisance. But then the question arises, how does it appear that the complainant has or will suffer any special and particular injury, as distinguished from any injury that the general public may suffer, by reason of the laying of the conduits and pipes in the alley? The complainant neither avers nor attempts to prove any special injury to itself, occasioned by any obstruction of the alley. Indeed, it is not averred or pretended that any person will be obstructed in the use of the alley, because of the laying of the conduits and pipes therein. In the case of a bill filed by a private individual to restrain a public nuisance, it must clearly appear from the allegations of the bill that the plaintiff will sustain a special and particular injury therefrom, and that such injury is or will be irremediable, as in the case of a purely private nuisance. There must be a clear necessity for the injunction in the light of inability to be compensated for the wrong. Otherwise a court of equity will not interfere. This is the established doctrine of the decided cases upon the subject, and especially of cases decided by the Supreme Court of the United States. City of Georgetown v. Canal Co., 12 Pet. 91; Irwin v. Dixion, 9 How. 10; Railroad Co. v. Ward, 2 Black, 485; Sparhawk v. Railway Co., 54 Pa. St. 401.
None of the requisites are shown in the bill to entitle the complainant to an injunction or to a restraining order, and *368 therefore the restraining order appealed from must be reversed, and the cause be remanded to the court below that the bill may be dismissed; and it is so ordered.

Order reversed and cause remanded.

On January 16, 1901, a motion was made on behalf of the appellees to modify the decree of this court.
On March 8, 1901, the motion was overruled, Mr. Chief Justice Alvey delivering the opinion of the Court:
In this case there has been a motion made by the appellee to modify the decree that was made by this court, by striking out and omitting therefrom the direction to the court below to dismiss the bill of complaint. The appeal to this court was from an interlocutory order granting a restraining order or injunction pendente lite. The injunction, however, was the principal relief sought by the bill; and this court held that the bill made no case for equitable relief whatever; that there was an entire want of ground shown for the exercise of equitable jurisdiction, and therefore the order appealed from was reversed, and the bill ordered to be dismissed. In such case, why or for what purpose should the bill be retained ? Perhaps the better-practice would be in such cases, instead of remanding the cause, with direction to the court below to dismiss the bill, for this court at once to dismiss the bill and put an end to the litigation. That would be according -to established practice in appellate courts, and especially in the United States Circuit Courts of Appeal, in such cases. Mast, Foos & Co. v. Stover Manfg. Co., 177 U. S. 485, 494, 495; Green v. Mills, 25 U. S. App. 383; Knoxville v. Africa, 47 U. S. App. 74. In the very recent case of Castner v. Coffman, 178 U. S. 168, the practice was fully approved;-the Supreme Court saying that if the bill be obviously devoid of equity upon its face, and such invalidity be incapable of remedy by amendment, they knew of no reason why, to avoid *369 further litigation, the court might not order the bill to be dismissed. See, also, the case of Burton v. Marshall, 4 Gill, 488-9, for similar practice.
There is nothing in the allegations of the bill, or in the nature of the case itself, to justify the opinion that the bill could be so amended as to entitle the complainant to the relief prayed.
The motion to modify the decree must therefore be overruled, ; and it is so ordered.