## SOUTH PENN OIL CO. v. MILLER et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 788.

1. ACTION (§ 22*)—FORM OF ACTION—LEGAL OR EQUITABLE—FEDERAL COURTS.

In the federal courts all suits having for their object a judgment for the payment of money or for the recovery of either real or personal property should be prosecuted on the law side of said courts, even if it be alleged that fraud and concealment exist or that a conspiracy has been entered into, because the party so charged has the constitutional right to a trial by jury.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 124–145; Dec. Dig. § 22.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EQUITY (§ 364*)—JURISDICTION OF FEDERAL COURTS OF EQUITY—SUIT ON LEGAL CAUSE OF ACTION.

A suit on a purely legal cause of action, brought on the equity side of a federal court, if objection has not been made thereto by the parties, should be dismissed by the court on its own motion.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 767; Dec. Dig. § 364.*]

3. PARTIES (§ 32*) — DEFECT OF PARTIES — PERSONS NECESSARY TO DETERMINATION OF ISSUES.

A court cannot adjudicate rights under conflicting oil leases of the same property, executed by different lessors, and each providing for the payment of royalties, in a suit between the lessees to which the lessors are not parties.

[Ed. Note.—For other cases, see Parties, Dec. Dig. § 32.*]

4. COURTS (§ 310*)—JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PARTIES—EFFECT OF NONJOINDER OF INDISPENSABLE PARTIES.

All persons who have such an interest in the subject-matter of a suit in a federal court as to render their presence necessary in order to make the final decree effectual are indispensable parties, and must be joined, although their citizenship is such as will oust the jurisdiction of the court.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 310.*]

5. COURTS (§ 492*)—CONFLICTING JURISDICTION—STATE AND FEDERAL COURTS—PRIORITY OF JURISDICTION.

The assumption by a state court of jurisdiction of a suit involving the determination of rights between lessees of oil lands under conflicting leases, and the granting of an injunction restraining the defendant from further operating on the land pending the suit, excludes a federal court from jurisdiction of a subsequent suit between the same parties involving the same issues during the pendency of the suit in the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1345; Dec. Dig. § 492.*

Conflict of jurisdiction with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Wheeling.

Suit in equity by J. T. Miller and others against the South Penn Oil Company and another. Decree for complainants, and the named defendant appeals. Reversed.

Thomas P. Jacobs, and Charles Powell (A. B. Fleming and Kemble White, on the briefs), for appellant.

Henry M. Russell, for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. The original bill alleges that the complainants, the appellees here, are citizens and residents of the state of West Virginia, and that the two defendants therein, the Eureka Pipe Line Company and the South Penn Oil Company, are corporations organized under the laws of the state of Pennsylvania, and citizens of that state, and that the amount in controversy is largely in excess of the sum of $2,000. It sets forth that the complainants were the owners, for development of oil and gas, of a tract of land in Wetzel county, W. Va., containing about 33 acres; that they held the same

by virtue of two certain instruments of writing, known as "oil leases," in which the grantors reserved a royalty of one-eighth of the oil produced, and were to receive $300 per year for each gas well. It is not necessary on this appeal that other provisions of the leases should be referred to.

It is further alleged that complainants drilled a productive oil well on said land, as required by the terms of the leases to them; that the defendant the Eureka Pipe Line Company, a corporation which carries on the business of receiving oil produced at the different wells in that locality and transporting it through pipe lines to places where it can be marketed, received the oil from said well and transported it to Pittsburg, to be there sold to such persons as complainants might direct; that from the 26th day of June, 1902, to the 1st day of October, 1902, said company received about 22,100 barrels of oil from that well, and that since the last-mentioned date all the oil produced at the well has passed into the lines of that company for transportation; that the drilling of an additional well on said lands was commenced by complainants, as required by the leases, but not completed, because of the mishaps incidental to such business, and also because of the acts of the defendants; that the market price of oil at Pittsburg has been, since said oil was so delivered, $1.22 per barrel, and that complainants, owning seven-eighths thereof, were entitled to receive for the same about $23,592; that the South Penn Oil Company was engaged extensively in the business of leasing property for the development of oil and gas; that it has many wells in West Virginia, and that the Eureka Pipe Line Company transports the oil of the South Penn Oil Company through its lines; that either because the South Penn Oil Company, or persons interested in it, hold large quantities of the stock of the Eureka Pipe Line Company, or for other reasons, it has a great and unreasonable influence over the acts and conduct of the Eureka Pipe Line Company; that until complainants drilled in the first producing well on the property mentioned the South Penn Oil Company made no claim to any rights to the same, but that soon after the producing well was finished said company set up a claim that it was the owner of the land for oil and gas purposes; that it claims to have valid leases for said property, from grantors other than those complainants claim under, but that the leases under which it so claims do not entitle it, nor has it any title that does entitle it, to the land so claimed by complainants; that the said two companies entered into a conspiracy between themselves for the purpose of asserting a claim on behalf of the South Penn Oil Company to the land so leased to complainants, and for the purpose of compelling them to surrender said land and the oil produced from it to that company; that in pursuance of such conspiracy the South Penn Oil Company served a notice on the Eureka Pipe Line Company, in which it was stated that said oil company was the owner, for oil and gas purposes, of the land which had been so leased to the complainants, and the owner of the oil so produced and run into the pipe line mentioned, and that in pursuance of such conspiracy the Eureka Company refused to deliver the oil, either to complainants or to the persons to whom they gave orders for

it; that the South Penn Oil Company holds oil and gas leases upon other properties in close proximity to the property so leased to complainants, and upon both sides of the same, and is drilling wells at places so close to complainants' leases that they will have the effect of draining the oil which belongs to complainants, and which is under the land so leased to them, unless they can proceed promptly and vigorously to drill other and successive wells on said property, so as to extract the oil therefrom; that the market price of oil remained at $1.22 per barrel from said 26th day of June, 1902, to October 1, 1902, and has since increased in price, and that complainants are entitled to have the Eureka Pipe Line Company account to them for all of said oil at the highest price at which oil may have been sold in the general market at any time between the 26th day of June, 1902, and the time when their oil may be delivered to them under the order of court; that complainants are entitled to a decree against said companies, so engaged in such conspiracy, for the amount which may represent the difference between the highest market price and the market price which may be in effect at the time when such delivery shall be made; that by reason of the circumstances mentioned complainants have been and are seriously injured, and have sustained loss because of the interference with their development of said property, and that if such situation continues they will suffer irreparable loss, and injury of such a character that the amount of it cannot be definitely measured or ascertained, and cannot be compensated for by any damages which complainants might recover in an action at law against said companies.

It is not necessary to recite other matters in the bill found, as they are not essential to the disposition of the questions now before this court. The prayer of the bill was that a preliminary injunction issue, restraining the South Penn Oil Company from interfering in any manner with the delivery to complainants, by the Eureka Pipe Line Company, of the oil so held by it; restraining the last-named company from retaining the possession of such oil, and from preventing complainants from taking and disposing of the same; directing such company to deliver to complainants without delay the oil in its possession received from the well mentioned; that said Eureka Pipe Line Company be required to render a specific account of the oil so received by it, and that a decree be entered in favor of complainants against said companies for the amount representing any difference between the highest market price during the period such oil was so retained and the market price prevailing when the oil should be so delivered to them; that, if it be found necessary, a receiver be appointed to take charge of and manage the property, develop the same, and receive and dispose of the oil and gas therefrom; that a decree be entered finally determining that the South Penn Oil Company has no rights or interest of any kind in or to said property; and also for such other and general relief as to equity may be proper.

This bill, with exhibits, was on the 13th day of October, 1902, presented in the court below, when on consideration thereof, Judge Jackson entered an order, in which it is stated that the facts presented established "prima facie" the right of complainants to the possession of sev-

en-eighths of the oil which had been produced from the well mentioned. Such order authorized complainants to enter into bond in the penalty of $30,000, with security, conditioned that complainants would comply with any future order of the court relating to the oil referred to, and pay all damages which might be incurred by the defendants, should the order thereafter be set aside. It then required that the South Penn Oil Company cease to enterfere in any way with the sale by complainants of the seven-eighths of the oil produced from said well, and directed the Eureka Pipe Line Company to deliver to complainants the seven-eighths of such oil. The court also then designated October 18, 1902, for the hearing of a motion made by complainants, for the appointment of a receiver, and on that day entered a decree appointing one, and directing him to take possession of the property, to proceed to complete the wells commenced by complainants, to drill other wells, and to do all other things necessary to be done for the proper development of the land for oil and gas. The receiver was directed to take possession of the oil produced from the wells on the land, and sell the same; and the Eureka Pipe Line Company was ordered to deliver to the receiver all of the oil that might come into its lines from said wells. The receiver was required to give bond in the penalty of $10,000, with the usual conditions.

The subpœna in chancery, summoning the defendants to answer the bill at December rules, 1902, was served on the Eureka Pipe Line Company on October 15, 1902, and on the South Penn Oil Company October 17, 1902. At said rules the defendants, appearing under protest for the purpose only of pleading to the jurisdiction of the court, filed a plea, alleging that the Eureka Pipe Line Company was not a corporation under the laws of the state of Pennsylvania, nor an inhabitant of that state, but that it was a corporation organized under the laws of the state of West Virginia, and was an inhabitant of that state; that complainants and each of them were citizens and inhabitants of the state of West Virginia, and that therefore, not in the court below, but in the circuit court of the county of Wetzel, in the state of West Virginia, where complainants resided and where said cause of action arose, was jurisdiction in the premises to be found. The Eureka Pipe Line Company at said rules also filed a separate and similar plea to the jurisdiction of the court, as did also the South Penn Oil Company, which company also filed a plea to the jurisdiction, alleging that prior to the institution of this suit by complainants it had filed its bill in the circuit court of Wetzel county, W. Va., against them and others, and that such court had assumed jurisdiction, and had issued an injunction against the defendants therein; that said bill and injunction had reference to the same property, rights, and controversies as are set forth in complainants' bill in this case, and therefore said South Penn Oil Company claimed that the circuit court of Wetzel county, W. Va., acquired and had jurisdiction in the premises.

These pleas to the jurisdiction were not then formally disposed of, but the decree entered March 8, 1903, has been regarded as in effect determining the questions raised by them. By that decree the motion of the South Penn Oil Company to dismiss the suit, on the ground

that the court had no jurisdiction was denied, and the motion of complainants that they be permitted to file an amended and supplemental bill, against the South Penn Oil Company as the sole defendant, and that the Eureka Pipe Line Company be dismissed from the suit, was granted. Thus the pleas to the jurisdiction, based upon the ground that the Eureka Pipe Line Company was a West Virginia corporation, and a resident of the district with the complainants, were held to be good; but the defect in jurisdiction caused thereby was supposed to be cured by the dismissal of the suit as to that company. By such decree the court also in effect held that the circuit court of Wetzel county, W. Va., had not acquired jurisdiction of the controversy.

The amended and supplemental bill was in substance the same as the original bill, save only that the allegations relating to the Eureka Pipe Line Company were omitted, and its prayer was for relief against the South Penn Oil Company asked for in the original bill. The case was duly matured, depositions taken, exhibits filed, argument heard, and final decree entered. By that decree the demurrer of appellant to the amended bill, incorporated in its answer, was considered by the court and overruled, and the questions raised by the special pleas to the jurisdiction of the court were formally found against appellant. The decree then proceeds to dispose of the real estate in controversy, giving to the appellees that portion thereof situated west of a certain designated line, and to the appellant the part east thereof. The money in the receiver's hands was distributed between the parties, each to receive the portion arising from the oil obtained from the land, respectively, assigned them. Other provisions of the decree become immaterial. The South Penn Oil Company applied for and was granted the appeal we are now to dispose of.

The jurisdiction of the court below is called in question. It is insisted that the original bill should not have been entertained, because upon its face it was apparent that a court of equity did not have jurisdiction to determine the causes of action therein set forth. The material averments of that bill, in substance, charged four separate causes of action against the defendants: First, the complainants say that they delivered to the Eureka Pipe Line Company certain quantities of oil, to be transported under contract to Pittsburg, there to be delivered to them, and that said defendant refuses to make such delivery, although requested so to do; second, it is alleged that by reason of the conspiracy set out in the bill, between the Eureka Pipe Line Company and the South Penn Oil Company, complainants are entitled to a decree against those defendants for the difference between the highest market price of oil during the time the Eureka Pipe Line Company retained the oil and the market price of oil at such time as that company shall actually deliver it; third, complainants insist that they have the right, under the facts alleged in the bill, to require the Eureka Pipe Line Company to render a specific account of the oil received from them and transported by it, and then to compel it to account to them for the same at its highest market price as before mentioned; fourth, complainants claim to own for oil and gas purposes the land involved, and they pray that it may be adjudicated that the South Penn Oil Com-

pany has no rights or interests of any kind in it. As we understand the bill, these are its main contentions, and it does not purport to be for the purpose of quieting title, or removing clouds thereon, nor for the settlement of disputed boundary lines, as was claimed in the argument.

If the Eureka Pipe Line Company transported complainants' oil under the contract alleged in the original bill, and then refused to deliver it, an action at law could have been maintained for breach of contract. No accounting was necessary, for complainants show the quantity of oil delivered and withheld, and it is well known that the guage at the well measures the number of barrels of oil that passes into the pipe line. If the conspiracy set forth in the bill had been formed and carried out, surely for damages resulting from such a tort the remedy at law was direct and complete, and in equity there is no effective way to ascertain the same. It is well to here observe that all matters relating to conspiracy, and damages because thereof, went out of this case with the exit therefrom of the Eureka Pipe Line Company. If the intention was to have the title of the South Penn Oil Company to the lease claimed by it adjudged to be invalid, and the title of the complainants to their leases to be valid, then the suit should have been brought on the law side of the court, where the controversy could have been decided by the verdict of a jury, to which the defendants were entitled.

Section 723 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 583,) which was enacted by the Congress as part of the original judiciary act, was passed September 24, 1789, and reads as follows:

"Suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law."

In the courts of the United States, all suits having for their object a judgment for the payment of money, or for the recovery of either real or personal property, should be prosecuted on the law side of said court; and this is true, even if it be set forth that fraud and concealment exist, or if it be alleged that conspiracy has been entered into, because the party so charged has a constitutional right to a trial by jury. The Supreme Court in Whitehead v. Shattuck, 138 U. S. 146, 151, 11 Sup. Ct. 276, 277, 34 L. Ed. 873, said:

"It would be difficult, and perhaps impossible, to state any general rule which would determine, in all cases, what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."

It has by repeated decisions of the Supreme Court been determined that actions having for their object the recovery of specific property—

either real or personal—whether with or without damages in connection with its detention, or to recover a judgment for breach of contract, or for damages to property, are legal suits, and that they can in the courts of the United States be prosecuted only on the law side thereof. And likewise has it been decided that, in suits regarding such matters instituted on the equity side of the federal courts, if the objection has not been made by demurrer, plea, or answer, nor suggested by counsel, the court should on its own motion, in the discharge of a duty imposed on it, dismiss the action. Hipp et al. v. Babin et al., 19 How. 271, 278, 15 L. Ed. 633; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 662, 11 Sup. Ct. 682, 35 L. Ed. 303; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167; Gordan et al. v. Jackson (C. C.) 72 Fed. 86; Erskine et al. v. Forest Oil Co. (C. C.) 80 Fed. 583; McGuire v. Pensacola City Co., 105 Fed. 677, 679, 44 C. C. A. 670; Jones v. Mackenzie, 122 Fed. 390, 393, 58 C. C. A. 96.

We also think the record discloses the fact that parties absolutely essential to the proper disposition of the questions decided by the court below were not before it, and that consequently, even had the subject-matter of the controversy been properly within its jurisdiction, the court could not have effectively disposed of it. Neither the lessors of the complainants, nor of the defendant, were made parties to the suit, and yet the final decree disposed of the funds in which they were interested, and decided the title to the property which they claim to own in fee simple. It takes from the one and gives to the other set of claimants portions of the land claimed, respectively, by those not made parties. It adjudges that the complainants are the owners, by virtue of their leases for oil and gas, of the real property in dispute that is located to the west of a certain line, although such property is claimed in fee simple by the lessors of the South Penn Oil Company, who were not permitted to defend their titles. The receiver is directed to turn over to the complainants the oil wells on the land so situated west of that line, thereby giving to complainants' lessors the royalty due from said wells, which is also claimed by the lessors of the defendant the South Penn Oil Company. And, again, the South Penn Oil Company is adjudged to be the owner of the wells found to be on the east side of said line, on land the title to which is claimed by the lessors of complainants, who are thereby deprived of the royalties due from the wells so given to the South Penn Oil Company. Clearly, these lessors are not deprived of their rights, or bound by said decree; nor are they estopped by it from litigating to protect their interests. Evidently the decree of the court below could not finally and effectually dispose of the controversy, as the lessors referred to were indispensable parties, and those claiming under it would hold defective titles.

It is apparent that these different lessors were not made parties, for the reason that, being citizens and residents of West Virginia, their presence would have destroyed the jurisdiction of the court. It is elementary that jurisdiction in the courts of the United States fails,

where all the parties on one side of the controversy have not a right, by diverse citizenship or alienage, to sue all the parties on the other side. Had the lessors of the South Penn Oil Company been made parties, the controversy would have been between complainants, who are citizens of West Virginia, and defendants among whom were also citizens of that state. The court would then have declined to take jurisdiction. While it is true that in the federal courts certain rules relating to the joinder of parties do not apply in cases where such joinder would oust the jurisdiction of the court, still all parties who have such an interest in the subject-matter of the litigation as to render their presence necessary in order to make the final decree effectual are indispensable, and must be before the court.

The record discloses that on the 10th day of October, 1902, the South Penn Oil Company filed in the circuit court of Wetzel county, W. Va., a bill in equity against the complainants in this suit, and also against all of complainants' lessors, as well as against its own lessors, in which bill the matters relating to the same subject-matter in controversy in the court below, except as the Eureka Pipe Line Company was concerned, were set forth; it being alleged in addition therein, among other things, that the defendants in the bill mentioned, including the complainants of the suit we now consider, were committing willful waste and trespass upon the lands and leaseholds of the complainants, said South Penn Oil Company, to its great loss and irreparable injury. The prayer of that bill, among other things, asked that an account be taken as to the oil produced from said land, and that a receiver be appointed. The order entered by the circuit court of Wetzel county, on the 10th day of October, 1902, which was prior to the institution of this suit in the court below, enjoined the defendants in that suit from further drilling for oil and gas on the lands involved, and from pumping, producing, or operating on that land for oil or gas. At the November rules, 1902, taken in the clerk's office of the circuit court of Wetzel county, the defendants to that bill, who are the complainants in this suit, filed a petition praying for the removal of the cause to the Circuit Court of the United States for the Northern District of West Virginia. Such suit was, substantially, concerning the same subject-matter as that involved in the suit instituted in the court below by the appellees, and it is plain that the final judgment of the circuit court of Wetzel county, had the case remained there, could have been pleaded in bar in any suit subsequently instituted by the appellees to this controversy. The Supreme Court of the United States, in Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666, said:

"When, in courts of concurrent jurisdiction, the pendency of a suit in one is relied on to defeat a second suit in the other, the identity of the parties, of the case made, and of the relief sought should be such that, if the first suit has been decided, it could be pleaded in bar as a former adjudication."

And the same court in Harkrader v. Wadley, 172 U. S. 148, 163, 19 Sup. Ct. 119, 125, 43 L. Ed. 399, said:

"Two propositions have been so firmly established by frequent decisions of this court as to require only to be stated. * * * Second. When a state court and a court of the United States may each take jurisdiction of a matter, the tribunal where jurisdiction first attaches holds it, to the exclusion of the

other, until its duty is fully performed and the jurisdiction involved is exhausted; and this rule applies alike to both civil and criminal cases. Freeman v. Howe, 24 How. 450 [16 L. Ed. 749]; Buck v. Colbath, 3 Wall. 334 [18 L. Ed. 257]; Taylor v. Taintor, 16 Wall. 366 [21 L. Ed. 287]; Ex parte Crouch, 112 U. S. 178 [5 Sup. Ct. 96, 28 L. Ed. 690]."

It is well that this spirit of comity has been recognized by both state and federal courts, for without it the result would be most disastrous, and collisions deplorable in character would undoubtedly occur.

The main question raised by the suit in the state court, brought by the South Penn Oil Company, related to the ownership for oil purposes of the land in controversy. That matter was also the contention in the case instituted in the court below. The other matters referred to, concerning which the action of the courts was asked, and for which the stating of accounts, the issuing of injunctions, and the appointment of receivers were prayed for, were merely incidental and collateral to the main question referred to. The suits were between the same parties, regarding the same controversy, and the state court had not only assumed jurisdiction, but had granted an injunction bearing directly on the property described in the bill, the property subsequently taken possession of by the receiver appointed by the federal court. It was this suit that defendants in their special pleas relied on to show that the court below should not take cognizance of complainants' bills.

Counsel for appellees cite several cases in which it has been held that the court first seizing or taking possession of the property involved can retain jurisdiction, even though a suit concerning the same subject-matter was pending in another court of concurrent jurisdiction at the time of the bringing of the action in the court where such seizure was made. Those cases in which facts peculiar to themselves controlled the action of the courts disposing of them have no application to the case at bar.

The suit so instituted in the circuit court of Wetzel county was, on the petition of the defendants therein, who are the complainants in this suit, removed to the United States Circuit Court for the Northern District of West Virginia, the court below, where it is still pending. In an effort to remove as far as practicable the difficulties that will unfortunately present themselves when this case comes again before that court, we venture to suggest that, if jurisdiction of that case can properly be retained by that court, and the receiver asked for in it is appointed, it might be well, before discharging the receiver appointed by the court below, to require him to turn over to the receiver so to be appointed the money and the property then in his hands, and also to require the appellees, who have received the proceeds of the sale of oil as before mentioned, to return the same to such new receiver, there to abide until such suit is decided. While the mandate of this court will require the dismissal of this suit, still the court below can retain it, for such time as may be necessary to protect the interests of the parties before it, and to preserve for those entitled thereto the property coming into its possession by virtue of the jurisdiction erroneously assumed.

There is error. The pleas to the jurisdiction should have been sustained. The original as well as the amended bill lacked equity. They should have been, on jurisdictional grounds, dismissed by the court, on its own motion, independent of plea, answer, or demurrer. The decree appealed from will be reversed, and the cause will be remanded, with directions to dismiss the bills.

Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes