## WYOMING *v.* COLORADO.

No. 15, Original.   Argued December 3, 1931.—Decided May 31, 1932.

Mr. *Paul W. Lee,* with whom *Messrs. Clarence L. Ireland,* Attorney General of Colorado, *Charles Roach,* Deputy Attorney General, *Fred A. Harrison,* Assistant Attorney General, *C. D. Todd, Wm. R. Kelly, George H.*

*Shaw, Donald C. McCreery, Wm. A. Bryans, III,* and *Lawrence R. Temple* were on the brief, for the defendant in support of the motion to dismiss.

*Mr. James A. Greenwood,* Attorney General of Wyoming, with whom *Messrs. Richard J. Jackson,* Deputy Attorney General, and *Philip S. Garbutt* and *George W. Ferguson,* Assistant Attorneys General, were on the brief, for complainant in opposition to the motion to dismiss.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This is a suit brought by the State of Wyoming against the State of Colorado to enforce a decree of this Court (259 U. S. 419, 496; 260 U. S. 1), rendered in an earlier suit between the same States respecting their relative rights to divert and use for irrigation the waters of the Laramie River, a stream rising in Colorado and flowing northward into Wyoming.

In the present bill, shortly described, Wyoming alleges that Colorado is departing from that decree by permitting the diversion and use within her territory of waters of the Laramie in quantities largely in excess of those accorded to her by the decree; that these excessive diversions are preventing Wyoming from receiving and using the amount of water which the decree accorded to her; that Colorado, unless restrained by this Court, will continue to permit such excessive diversions and thereby will largely or entirely deprive Wyoming of the use of the water accorded to her in the decree; that the measuring devices installed by Colorado to measure the waters diverted within her territory do not accurately show the full quantities so diverted; and that Colorado refuses, although duly requested, to permit Wyoming to install other suitable devices or participate in the measurements.

The bill construes the decree as determining the rights of the two States in the waters of the Laramie by according to Colorado

1. 18,000 acre feet of water per annum by reason of the Skyline ditch appropriation;

2. 4,250 acre feet of water per annum by reason of certain meadowland appropriations;

3. A relatively small amount of water appropriated prior to 1902 through the Wilson Supply ditch from the headwaters of Deadman Creek, a Colorado tributary of the Laramie; and

4. 15,500 acre feet of water per annum by reason of the Laramie-Poudre tunnel appropriation, making an aggregate of 37,750 acre feet per annum, apart from the Wilson Supply ditch appropriation;

and by according to Wyoming 272,500 acre feet of water per annum by reason of appropriations in that State.

The relief sought is the protection and quieting of Wyoming's rights under the decree; provision for accurately and effectively measuring and recording the quantities of water diverted in Colorado; an injunction restraining Colorado from continuing or making any diversion in excess of the quantities of water accorded to her by the decree—in the event the injunction in that decree is held to relate only to diversion by reason of the Laramie-Poudre tunnel appropriation; and such other and full relief as may be just and equitable.

Colorado challenges the bill by a motion to dismiss in the nature of a demurrer. The principal grounds of the motion are, (1) that the bill proceeds upon the theory that the prior decree determined, as against Colorado and her water users, the full quantity of water which rightfully may be diverted from the stream within that State, and likewise the quantity which Wyoming and her water users are entitled to receive and use from the stream

within that State—all of which, it is insisted in the motion, is refuted by the record, opinion and decree in the prior suit; (2) that the bill shows that the acts complained of are not acts done by Colorado, or under her authority, but acts done by private corporations and individuals not parties to the present suit and with respect to which no relief can be had against Colorado; and (3) that, in any event, the bill fails to show with certainty any violation of the decree or any damage to Wyoming or her water users.

In the bill, Wyoming does take the position that the decree in the earlier suit determines the rights of each State as against the other, including their respective water users, respecting the diversion and use of the waters of the interstate stream—in other words, that the decree fixes and limits the quantities of water which Colorado, including her water users, is entitled to divert and use within that State and thus withhold from Wyoming, and likewise determines the amount of water which Wyoming, including her water users, is entitled to receive and use within her territory. Counsel for Colorado, recognizing that such is the position taken in the bill, say in their brief: " The principal purpose of the motion to dismiss is to join issue with the contention of the complainant that the whole matter has already been adjudicated by the former decree. The problem so presented is a law question and it is apprehended that this should be determined *in limine*." And, after indicating Colorado's purpose to answer if so required, they further say: " We insist, however, that the cause will be greatly accelerated and confusion be avoided by determining at the threshold the issues of law tendered by the complainant, and thereupon the issues of fact should be defined, if any are considered to stand for adjudication after passing upon the construction problem, which is the only substantial controversy

in the case." Evidently therefore the construction of the decree in the earlier suit is the chief matter in dispute.

That suit was brought by Wyoming against Colorado and two Colorado corporations. The corporations, with Colorado's authority and permission, were proceeding to divert water from the Laramie in Colorado and to conduct it through a proposed tunnel into the valley of the Cache la Poudre in Colorado, there to be used in irrigation. The project was designed to divert from the Laramie 56,000 acre feet per annum at first and 15,000 more later on. The purpose of the suit was to prevent the proposed diversion, and to that end the complaint set forth, among other things, that the doctrine of appropriation for beneficial use, whereby priority in time gives priority in right, was recognized and applied by both Colorado and Wyoming in adjusting conflicting claims to the use of waters of natural streams; that Wyoming and her citizens had been for many years irrigating and thereby making highly productive very large amounts of land along the Laramie and its tributaries in that State through the use of waters appropriated for that purpose from those streams, and expenditures running into millons of dollars had been made in the construction of reservoirs, canals and other appliances for the purpose of so using such waters; that these appropriations and this use had been maintained from a time long prior to the commencement of the Laramie-Poudre tunnel project in Colorado; that the date when that project was commenced was " on or about the first day of December, 1909 "; that before that project was commenced Colorado and certain of her citizens had appropriated water from the Laramie in Colorado for the irrigation of lands (meadow lands) in that State adjacent to that stream, but that the total amount of water reasonably and beneficially used upon such lands did not exceed 6,000 acre feet per annum; that " no other appropriations or use of said waters of

said Laramie River or its tributaries had been made by the State of Colorado or its citizens, or within the said State of Colorado, prior to the appropriations of said waters by your orator and its citizens as herein set forth "; that prior to the commencement of the Laramie-Poudre tunnel project in Colorado, Wyoming and her citizens had appropriated all of the available waters of the Laramie and its tributaries for the actual irrigation of lands in Wyoming aggregating hundreds of thousands of acres and supporting thousands of people; that without the use of the waters so appropriated these lands would be to a large extent valueless and incapable of supporting any considerable population; and that the consummation of the proposed Laramie-Poudre tunnel diversion would deprive Wyoming and her citizens of a very large amount of water to the use of which they were rightly entitled in virtue of their appropriations, and would take from many of their lands much of their value.

The prayer was for an injunction preventing the defendants and each of them from making the proposed diversion, and for general relief.

Colorado, in answering the complaint, admitted that before the commencement of the Laramie-Poudre tunnel project certain of her citizens had appropriated water from the Laramie and its tributaries in that State for the irrigation of adjacent lands (meadow land), but averred that these appropriations amounted to about 8,000 acre feet per annum; alleged that " other appropriations of said waters of said Laramie River and its tributaries had been made by the State of Colorado and its citizens within the State of Colorado prior to the appropriations of said waters by complainant and its citizens "; averred that the right to the proposed Laramie-Poudre tunnel diversion was initiated, by commencement of construction, August 25, 1902, and that at the time of such initiation there was abundant water in the Laramie to satisfy all

prior appropriations then in existence in Colorado and Wyoming; denied that Wyoming and her citizens had appropriated all of the available waters of the Laramie and its tributaries prior to that threatened diversion, and averred that there was ample water in those streams to supply the threatened diversion and all prior rights in Wyoming; alleged that when the right to make that diversion was initiated, the appropriations effected or initiated in Wyoming did not exceed 50,000 acre feet; averred that the maximum diversion which could be made through the Laramie-Poudre tunnel project did not exceed 70,000 acre feet annually, and the topographical and physical conditions were such that "by the system sought to be enjoined herein, and all other available means, no more than 90,000 acre feet annually can be diverted from said stream and its tributaries for use upon lands lying within the State of Colorado"; and denied that the consummation of the threatened diversion would work any injury to Wyoming or her citizens or the lands in that State.

Thus the pleadings directly put in issue the priority and measure of the appropriations in each State as against those in the other State, and also the extent of the available supply of water whereon all of the appropriations depended.

Evidence was produced by both States directly bearing upon these issues. Colorado's evidence was addressed to showing all appropriations in that State, not merely the Laramie-Poudre tunnel appropriation; and that evidence dealt in detail with the dates and measure of the meadow-land appropriations referred to in the complaint and answer; with the existence, date and measure of the Skyline ditch appropriation and the Wilson Supply ditch appropriation; and even with an appropriation from Sand Creek, a small interstate stream nominally but not actually a tributary of the Laramie. Colorado's state engineer gave

4,250 acre feet per annum as the measure of the meadow-land appropriations, 18,000 acre feet per annum as the measure of the Skyline ditch appropriation, and 2,000 acre feet per annum as the measure of the Wilson Supply ditch appropriation. Some of her witnesses gave different measures. All who spoke of the Wilson Supply ditch agreed that it was used to divert water from the head-waters of Deadman Creek, a Colorado tributary of the Laramie, into Sand Creek, from which that water, or its equivalent, was rediverted at a lower point, along with other water from Sand Creek, through the Divide ditch and ultimately carried into the Cache la Poudre valley. Colorado's evidence indicated that the meadow-land, Skyline and Wilson Supply appropriations were earlier than the Laramie-Poudre tunnel appropriation and many of the Wyoming appropriations; and Wyoming recognized this difference in the dates of appropriation, although raising some question as to the quantity of water in the earlier appropriations so recognized.

In their briefs in that suit counsel for Colorado, while urging that the doctrine of appropriation was not applicable to a controversy between the two States, but only to controversies between private appropriators within the same State, recognized that the Court might hold otherwise; and on that basis they presented what they termed " a complete review of the evidence showing the respective priorities of diversion from the Laramie River in Colorado and Wyoming." In that review they listed the aforementioned meadow-land, Skyline, Wilson Supply and Sand Creek appropriations and the proposed Laramie-Poudre tunnel appropriation, as constituting the " diversions and use by Colorado and her citizens," and urged that Colorado be recognized as entitled to all of them under the rule of priority, if that rule was given effect.

502

With the issues, evidence and propositions of law here outlined submitted to it, the Court proceeded to a decision.

The influence to be given to the doctrine of appropriation was much considered, as the opinion shows, and in disposing of that question the Court said (259 U. S. 467, 468, 470):

" The lands in both States are naturally arid and the need for irrigation is the same in one as in the other. The lands were settled under the same public land laws and their settlement was induced largely by the prevailing right to divert and use water for irrigation, without which the lands were of little value. Many of the lands were acquired under the Desert Land Act which made reclamation by irrigation a condition to the acquisition.

.    .    .    .    .    .    .

" In neither State was the right to appropriate water from this interstate stream denied. On the contrary, it was permitted and recognized in both. The rule was the same on both sides of the line. Some of the appropriations were made as much as fifty years ago and many as much as twenty-five. In the circumstances we have stated, why should not appropriations from this stream be respected, as between the two States, according to their several priorities, as would be done if the stream lay wholly within either State? By what principle of right or equity may either State proceed in disregard of prior appropriations in the other?

" Colorado answers that this is not a suit between private appropriators. This is true, but it does not follow that their situation and what has been accomplished by them for their respective States can be ignored. As respects Wyoming the welfare, prosperity and happiness of the people of the larger part of the Laramie valley, as also a large portion of the taxable resources of two counties, are dependent on the appropriations in that State.

Thus the interests of the State are indissolubly linked with the rights of the appropriators. To the extent of the appropriation and use of the water in Colorado a like situation exists there.

.        .        .        .        .        .        .

"We conclude that Colorado's objections to the doctrine of appropriation as a basis of decision are not well taken, and that it furnishes the only basis which is consonant with the principles of right and equity applicable to such a controversy as this is. The cardinal rule of the doctrine is that priority of appropriation gives superiority of right. Each of these States applies and enforces this rule in her own territory, and it is the one to which intending appropriators naturally would turn for guidance. The principle on which it proceeds is not less applicable to interstate streams and controversies than to others.[1] Both States pronounce the rule just and reasonable as applied to the natural conditions in that region; and to prevent any departure from it the people of both incorporated it into their constitutions. It originated in the customs and usages of the people before either State came into existence, and the courts of both hold that their constitutional provisions are to be taken as recognizing the prior usage rather than as creating a new rule. These considerations persuade us that its application to such a controversy as is here presented cannot be other than eminently just and equitable to all concerned."

Respecting the available supply of water the Court found from the evidence that Sand Creek is nominally but not actually a tributary of the Laramie, and therefore not to be considered; that at Woods, a gauging station near the Colorado-Wyoming stateline, the natural flow of the Laramie after the " recognized Colorado ap-

---

[1] Followed and applied in *Weiland* v. *Pioneer Irrigation Co.*, 259 U. S. 498, 502.

propriations " are satisfied is such as to afford an available supply of 170,000 acre feet per year, but not more; that the stream receives below Woods contributions of 93,000 acre feet from the Little Laramie and 25,000 acre feet from smaller affluents, making the entire available supply 288,000 acre feet, apart from the quantities required to satisfy the " recognized Colorado appropriations "; and that

" The available supply—the 288,000 acre feet—is not sufficient to satisfy the Wyoming appropriations dependent thereon and also the proposed Colorado appropriation,[2] so it becomes necessary to consider their relative priorities.

" There are some existing Colorado appropriations having priorities entitling them to precedence over many of the Wyoming appropriations. These recognized Colorado appropriations are,[3] 18,000 acre-feet for what is known as the Skyline Ditch and 4,250 acre-feet for the irrigation of that number of acres of native-hay meadows in the Laramie valley in Colorado, the 4,250 acre-feet being what Colorado's chief witness testifies is reasonably required for the purpose, although a larger amount is claimed in the State's answer. These recognized Colorado appropriations, aggregating 22,250 acre-feet, are not to be deducted from the 288,000 acre-feet, that being the available supply after they are satisfied. Nor is Colorado's appropriation from Sand Creek to be deducted, that creek, as we have shown, not being a tributary of the Laramie."

From the evidence bearing upon the relative priorities of the proposed Colorado appropriation and the Wyoming appropriations the Court found that work on the former

---

[2] The reference is to the threatened Laramie-Poudre tunnel diversion.

[3] The Wilson Supply ditch appropriation should have been included here among the recognized Colorado appropriations and was included among them in a modified decree, as will appear later on.

was begun in the latter part of October, 1909, and was prosecuted with such diligence that the appropriation should be accorded a priority as of the date when the work was begun; that some of the Wyoming appropriations were senior and others junior to that appropriation; that those which were senior to it and dependent on the common source of supply amounted to 272,500 acre feet per annum; and that

"As the available supply is 288,000 acre-feet and the amount covered by senior appropriations in Wyoming is 272,500 acre-feet, there remain 15,500 acre-feet which are subject to this junior appropriation in Colorado."

After stating these findings, the Court's opinion concluded:

"A decree will accordingly be entered enjoining the defendants from diverting or taking more than 15,500 acre-feet per year from the Laramie River by means of or through the so-called Laramie-Poudre project."

Thereupon a decree was entered declaring (259 U. S. 496):

"It is considered, ordered and decreed that the defendants, their officers, agents and servants, be, and they are hereby, severally enjoined from diverting or taking from the Laramie River and its tributaries in the State of Colorado more than fifteen thousand five hundred (15,500) acre-feet of water per annum in virtue of or through what is designated in the pleadings and evidence as the Laramie-Poudre Tunnel appropriation in that State,

"Provided, that this decree shall not prejudice the right of the State of Colorado, or of any one recognized by her as duly entitled thereto, to continue to exercise the right now existing and hereby recognized to divert and take from such stream and its tributaries in that State eighteen thousand (18,000) acre-feet of water per annum in virtue of and through what is designated in the pleadings and

evidence as the Skyline Ditch appropriation in that State; nor prejudice the right of that State, or of any one recognized by her as duly entitled thereto, to continue to exercise the right now existing and hereby recognized to divert and take from such stream and its tributaries in that State four thousand two hundred and fifty (4,250) acre-feet of water per annum in virtue of and through the meadow-land appropriations in that State which are named in the pleadings and evidence; nor prejudice or affect the right of the State of Colorado or the State of Wyoming, or of any one recognized by either State as duly entitled thereto to continue to exercise the right to divert and use water from Sand Creek, sometimes spoken of as a tributary of the Laramie River, in virtue of any existing and lawful appropriation of the waters of such creek."

Colorado and her co-defendants presented a petition for rehearing on stated grounds, one of which was that the Wilson Supply ditch appropriation was inadvertently omitted, in both opinion and decree, from the recognized early Colorado appropriations. As the omission was in fact inadvertent, the decree was then so modified as to include that appropriation among the others which Colorado was recognized as having a right to continue. 260 U. S. 1. A change in the provision respecting costs also was sought in the petition, and was included in the modified decree. In other respects the original decree was adhered to and a rehearing denied. In that petition Colorado and her codefendants construed the decree as allotting the available supply between the two States according to priority in appropriation and limiting Colorado's allotment " to 37,750 acre feet annually—Skyline 18,000, plus Colorado meadows 4,250, plus Laramie-Poudre 15,500."

We are of opinion that the record, opinion and decree in the prior suit, here reviewed at length, show very plainly that the decree must be taken as determining the

relative rights of the two States, including their respective citizens, to divert and use the waters of the Laramie and its tributaries. These rights were put in issue by the pleadings, displayed in the evidence, and considered and resolved in the opinion. Not only so, but the question of priority in time and right as between the appropriations in Colorado and those in Wyoming was directly presented by the pleadings and evidence and distinctly dealt with and resolved in the opinion.

As appears from the opinion, the Court held that the doctrine, long recognized and enforced in both States, whereby priority of appropriation gives superiority of right, furnished the only equitable and right basis on which to determine the controversy between them shown in the pleadings and evidence.

And as further appears from the opinion, the Court made specific findings showing the amount of water in the available supply, its insufficiency to satisfy all asserted appropriations, the date when the proposed tunnel appropriation in Colorado was initiated, the names and amounts of the appropriations in Colorado which were senior to that appropriation, the amount of water included in the Wyoming appropriations which were senior to it, and the amount which would remain in the supply and be subject to that appropriation after deducting what was required to satisfy the senior appropriations in both States.

These findings were pertinent to the issues, and upon them the Court pronounced its decree. Under a familiar rule the facts thus determined are not open to dispute in a subsequent suit between the same States.[4]

As before shown, the modified decree (1) restricts diversion under the Colorado tunnel appropriation to 15,500 acre feet, the amount which under the findings would re-

---

[4] *Southern Pacific R. Co.* v. *United States,* 268 U. S. 1, 48; *Southern Pacific R. Co.* v. *United States,* 183 U. S. 519, 532.

main in the supply after deducting the quantities included in the senior appropriations in both States; (2) recognizes and protects the Skyline appropriation of 18,000 acre feet, it being a senior Colorado appropriation; (3) similarly sustains the meadow-land appropriations of 4,250 acre feet, they being senior Colorado appropriations; (4) recognizes and protects the small Wilson Supply ditch appropriation made prior to 1902, it being a senior Colorado appropriation inadvertently omitted from the list in the opinion but given its proper place by a modification of the original decree; and (5) saves from prejudice all appropriations of the waters of Sand Creek, found not to be a tributary of the Laramie.

The decree enjoins any diversion through the tunnel appropriation in excess of the 15,500 acre feet accorded to it—and this doubtless for the reason that there had been a declared and real purpose to divert from 56,000 to 71,000 acre feet under that appropriation. No showing appears to have been made indicative of any occasion at that time for a broader injunction. Of course, in the absence of such a showing, a broader injunction was not justified. Certainly the limited injunction which was granted does not warrant any inference that it marks the limits of what was intended to be decided. Such an inference would be inconsistent with other parts of the decree and with the opinion and the findings therein.

Construing the decree in the light of the record and opinion, to which counsel for both States appeal, we think it was intended to and does define and limit the quantity of water which Colorado and her appropriators may divert from the interstate stream and its tributaries and thus withhold from Wyoming and her appropriators.

But it is said that water claims other than the tunnel appropriation could not be, and were not, affected by the decree, because the claimants were not parties to the suit or represented therein. In this the nature of the suit is misconceived. It was one between States, each acting

as a quasi-sovereign and representative of the interests and rights of her people in a controversy with the other. Counsel for Colorado insisted in their brief in that suit that the controversy was "not between private parties" but "between the two sovereignties of Wyoming and Colorado"; and this Court in its opinion assented to that view, but observed that the controversy was one of immediate and deep concern to both States and that the interests of each were indissolubly linked with those of her appropriators. 259 U. S. 468. Decisions in other cases also warrant the conclusion that the water claimants in Colorado, and those in Wyoming, were represented by their respective States and are bound by the decree.[5]

The contention that the present bill shows that the acts complained of are not acts done by Colorado, or under her authority, but acts done by private corporations and individuals not parties to the present suit, is shown by the bill to be untenable. It is there alleged that Colorado in 1926 permitted a diversion from the Laramie through the Laramie-Poudre tunnel appropriation materially in excess of the 15,500 acre feet specified in the decree; that in 1926, 1927 and 1928, with the knowledge, permission and cooperation of Colorado, diversions were made from the Laramie and its tributaries through the Skyline ditch appropriation in stated amounts materially in excess of the 18,000 acre feet specified in the decree; that in 1926, 1927, 1928 and 1929, with the knowledge, consent and cooperation of Colorado, diversions were made from the Laramie and its tributaries through the meadowland appropriations in various amounts pronouncedly in excess of the 4,250 acre feet

---

[5]*Missouri* v. *Illinois*, 180 U. S. 208, 241; *Kansas* v. *Colorado*, 185 U. S. 125, 142; s. c., 206 U. S. 46, 49; *Georgia* v. *Tennessee Copper Co.*, 206 U. S. 230, 237; *Hudson Water Co.* v. *McCarter*, 209 U. S. 349, 355; *Pennsylvania* v. *West Virginia*, 262 U. S. 550, 591, 595; *North Dakota* v. *Minnesota*, 263 U. S. 365, 373; *Rhode Island* v. *Massachusetts*, 12 Pet. 657, 748; *Florida* v. *Georgia*, 17 How. 478, 494, 510, 522.

specified in the decree; and that Colorado has permitted other diversions from the Laramie and its tributaries in violation of the decree through the Bob Creek and other designated ditches, none of which were recognized or named in the findings or decree.

The contention that the bill fails to show with certainty any violation of the decree or any damage to Wyoming or her water users is largely refuted by the allegations just noticed, and is further refuted by an allegation that annually since the entry of the decree the amount of water in the Laramie available to Wyoming for its water users has been less than the 272,500 acre feet specified in the Court's findings, and this shortage has been caused by the excessive and otherwise unlawful diversions before described. It is true that some of the allegations purporting to state violations of the decree are uncertain and indefinite, but there are many which are not subject to this criticism, and plainly there is enough in the bill to require that the defendant be called upon to answer it.

An order will be entered overruling the motion to dismiss, permitting Wyoming to amend her bill within thirty days by making some of its allegations more definite and certain, if she be so advised, and permitting Colorado to answer the bill or amended bill, as the case may be, on or before the first day of September, next.

*Motion to Dismiss Overruled.*