NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL 926, INTERNATIONAL UNION
OF OPERATING ENGINEERS,
AFL-CIO, Respondent.

No. 17384.

United States Court of Appeals
Fifth Circuit.

May 26, 1959.

Jerome D. Fenton, Gen. Counsel, Arnold Ordman, Atty., N.L.R.B., Thomas J. McDermott, Assoc. Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

John S. Patton, Poole, Pearce & Hall, Ed Pearce, Atlanta, Ga., for respondent.

Before HUTCHESON, Chief Judge, and BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is a secondary boycott case. The National Labor Relations Board issued a cease and desist order against Local 926, International Union of Operating Engineers, AFL-CIO, and now seeks enforcement of the order.[1] The Union questions the propriety of granting enforcement and contends that the order is too broad. We modify the order and grant enforcement of the order as modified.

The case originated in a primary labor dispute between the Union and Columbus Construction Company. Armco Drainage and Metal Products, Inc. had awarded Columbus a grading and drainage contract on a new fabricating plant being constructed near College Park, Georgia. Armco also had awarded a plumbing contract to Hunter Plumbing Company and a contract for power installation to Cleveland Electric Company. The Union complained that Columbus was using non-union operating engineers and that Columbus had refused to enter into a collective bargaining agreement with the Union. The Union had no quarrel with Armco, Hunter, and Cleveland but in order to bring pressure to bear on Columbus the Union picketed the construction project, using a sign that read: "The Engineers on this job are non-union and are invited to become members of Engineers Local Number 926, AFL-CIO and enjoy the benefits being received by Union Engineers".[2] When the pickets appeared the steel erectors employed by Armco and the electricians employed by Cleveland stopped working and left the job site. The Union informed Armco that the pickets would be removed only if Armco cancelled its contract with Columbus or if Columbus "went union on all its jobs".

Armco then filed unfair labor practice charges against the Union. The Union informed the Board that it did not desire to contest the case and that it would agree to any order the Board might enter. The Board insisted on a hearing and trial, in spite of the Union's continuing offer to enter into an informal settlement of compliance. The Board found that the Union's conduct was a violation of Section 8(b) (4) (A)[3] of the Act, and issued a broad order against the Union.

The Union makes two contentions. First, the Union contends that in view of its offer to comply, there was no need for the Board proceedings and there is no need for a court decree enforcing the Board order. Second, the Union contends that the facts in the case do not justify an order as broad as the one issued by the Board.

---

1. This Court has jurisdiction of the proceeding under Section 10(e) of the National Labor Relations Act, as amended. 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

2. After Armco filed unfair labor practice charges, the wording of the sign was changed to read: "Operating Engineers Local Number 926, AFL-CIO picketing Columbus Construction Company for the purpose of organization. We invite the employees of Columbus Construction Company to join our local Union. See our leaflet." The change in the wording produced no effect. Armco employees did not return to their jobs until Columbus completed work on its contract a few weeks later.

3. Section 8(b) (4) (A) of the Act provides, so far as relevant here, that it shall be an unfair labor practice for a labor organization or its agents "to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment * * * to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person * * * to cease doing business with any other person."

## I.

■ The record clearly supports the Board's finding that the Union exercised unlawful coercive pressure upon neutrals with the object of bringing Columbus to terms. We look with jaundiced eye on the Union's offer to comply with the Board's order. The offer was made after all work at the site by operating engineers was completed.

■ Congress has entrusted broad discretion to the National Labor Relations Board in the enforcement of the Act. "[The Board] has the discretion of asking the Courts to enforce its orders; it is not compelled by the statute to seek enforcement of its orders." N. L. R. B. v. Newspaper & Mail Deliverers' Union, 3 Cir., 1957, 246 F.2d 62, 65. Compliance is not a bar to an enforcement order. Within a reasonable discretion, the Board is entitled to judicial enforcement of its orders, even in cases where the offending parties have already complied with those orders. N. L. R. B. v. Mexia Textile Mills, 1950, 339 U.S. 563, 567, 70 S.Ct. 826, 94 L.Ed. 1067. It was within the reasonable exercise of the Board's discretion to conclude that an enforcement order was necessary to provide an effective remedy, notwithstanding the Union's willingness, even eagerness, to enter into an informal settlement of compliance.

## II.

■ The scope of the order is a different matter. The order, in part, requires the Union to:

"1. Cease and desist from engaging in, or inducing or encouraging the employees of any employer, other than Columbus Construction Company, to engage in, a strike or concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities, or to perform any services where an object thereof is to force or require any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of, or to cease doing business with, Columbus Construction Company, *or with any other employer or person.*"

A "broad order" was not requested in the pleadings, at the hearing, in argument, or in briefs before the Trial Examiner. The Trial Examiner recommended the usual order requiring the Union to cease and desist from inducing secondary employees to strike or to refuse to handle goods where an object is to force anyone to stop doing business with Columbus, the primary employer. The Board attempts to justify the breadth of its order on the ground that "the Respondent has engaged in similar violations in respect to other employers in the area * * * [and] it can be reasonably expected that the Respondent will continue to commit similar violations in the future". The alleged "similar violations" were two Campbell Coal cases.[4]

At the trial of the case, the government introduced no evidence relating to any other instances of alleged violations by the Union showing a state-wide or area-wide policy of engaging in secondary boycotts. No mention was made of the Campbell Coal cases. These two cases arose out of one alleged violation. In one case the charge was filed by Campbell Coal Company and in the other by the trade association of which the company was a member. As a matter of fact no evidence was taken in these cases upon which the Board could base a determination as to whether the Union had violated the Act. The Campbell Coal cases were terminated without prejudice by a "Settlement Stipulation" containing a provision that the Union "does not admit it has committed the acts or has en-

4. Local 926, International Union of Operating Engineers, AFL–CIO (Campbell Coal Co.), Case No. 10–CC–187, consent decree enforcing settlement agreement, issued January 28, 1957; the same, Case No. 10–CC–173, consent decree enforcing settlement agreement, issued June 24, 1957.

gaged in the unfair labor practices alleged in the consolidated complaint".[5]

■ Section 10(c) of the Act expressly authorizes the Board, upon finding an unfair labor practice, to enter an order requiring the offending party "to cease and desist from such unfair labor practice, and to take such affirmative action * * * as will effectuate the policies of this Act". This is broad language. But it imposes a corresponding responsibility not to issue a broad order without the record to support it.

In this case the order is designed to protect not only the employers doing business with Columbus Construction Company but "any other employer or person." There is nothing in the record to justify any such broad coverage. To find support for its order, the Board must go beyond the record, to the Campbell Coal cases, and, in effect, repudiate the stipulation solemnly entered into by the Board.

We are aware of the considerations supporting a broad grant of discretion to the Board in determining the proper remedy for a violation of the Act. We consider more important, and basic to a fair administration of the Act, the hard-won principle of Anglo-American law that a judgment or order must find adequate support in the record. An order of a court or federal agency that goes beyond the record to penalize an offender as a bad actor smacks too much of attainder to be acceptable to this Court. We are committed to a narrower view of the proper scope of orders that may furnish the basis for contempt proceedings. N. L. R. B. v. Ford Motor Co., 5 Cir., 1941, 119 F.2d 326; N. L. R. B. v. Dallas General Drivers, etc., Local Union 745, 5 Cir., 1956, 228 F.2d 702; Truck Drivers and Helpers Local Union No. 728, etc. v. N. L. R. B., 5 Cir., 265 F.2d 439. On this issue we are in general

agreement with International Brotherhood of Teamsters, etc. v. N. L. R. B., D.C.Cir., 1958, 262 F.2d 456 and N. L. R. B. v. Cleveland-Cliffs Iron Co., 6 Cir., 1943, 133 F.2d 295. See also N. L. R. B. v. Express Publishing Co., 1941, 312 U. S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

Accordingly, we modify the order of the Board by deleting the phrase of the first paragraph: "*or with any other employer or person*". As modified, we grant enforcement of the order.

---

5. The stipulation provides:

"The respondent does not by the execution of this settlement stipulation or otherwise admit that it has committed the acts or has engaged in the unfair labor practices alleged in the consolidated complaint heretofore issued in this cause and this settlement stipulation shall not be construed as an admission by the respondent that it has engaged in said unfair labor practices or has committed said acts."