NATIONAL LABOR RELATIONS
BOARD, Petitioner (Sline In-
dustrial Painters—Employer)

v.

LOCAL 450, INTERNATIONAL UNION
OF OPERATING ENGINEERS,
AFL–CIO, Respondent.

No. 17789.

United States Court of Appeals
Fifth Circuit.

Feb. 18, 1960.

Rehearing Denied April 14, 1960.

See also 5 Cir., 275 F.2d 413, 420.

Melvin J. Welles, Atty., Thomas J. Mc-Dermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stu-

art Rothman, Gen. Coun., N. L. R. B., Washington, D. C., for petitioner.

Warner F. Brock, Houston, Tex., for respondent.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

■ This case is before the Court upon the petition of the National Labor Relations Board for enforcement of its order issued against respondent on March 3, 1959. The Board's Decision and Order in the unfair labor practice proceeding are reported at 123 N.L.R.B. 2. The Board's earlier Decision and Determination of Dispute relating to the instant matter is reported at 119 N.L.R.B. 1725. This Court has jurisdiction of the proceedings under Section 10(e) of the Act, 29 U.S.C.A. § 160(e), the unfair labor practices having occurred at Texas City, Texas, where Sline Industrial Painters, herein called Sline (the employer here involved), was engaged in construction work affecting interstate commerce.

The Board found that respondent violated Section 8(b) (4) (D) of the Act [1] by inducing and encouraging employees to cease work for the purpose of requiring Sline to assign the work of operating an air compressor to a member of respondent rather than to other Sline employees. The Board's finding was based on the following statement of facts, which respondent says "is substantially correct."

In April 1957, Sline was engaged in construction and maintenance painting at the Monsanto plant in Texas City, Texas. In connection with its work Sline used an air compressor which was virtu-ally automatic, but required manual starting and stopping by turning a key, work involving only about a minute each day. Sline followed the general practice of having employees nearest the compressor start and stop it. On April 2 respondent's steward, Bud Miller,[2] had asked Leslie May (Sline's superintendent) if he was going to hire an operating engineer for the compressor, and May replied that he was not. Miller called this to the attention of Searcy, respondent's business representative, who thereafter attempted to get Sline to hire an engineer, and told the operating engineers employed by Tampco to delay reporting for work the morning of April 3. Searcy then spoke to Donovan, Monsanto's superintendent, and asked him to help persuade Sline to hire an engineer. Believing that Donovan would get the matter straightened out, Searcy instructed Tampco's operating engineers to report for work. Meanwhile, also on April 3, May instructed Combre, a member of Painters' Local 585, who happened to be nearby, to start the compressor, and May made Combre responsible for starting the compressor thereafter.

Later in the morning of April 3 Donovan told Searcy he was not able to help him. Shortly thereafter, Piangenti, timekeeper for Tampco, received two calls at Tampco's field office for Miller. Miller was not then available, and a message was left to have him call Searcy at respondent's local hiring hall. Accordingly, when Miller came to Tampco's office shortly before noon, he called Searcy. After completing the call, Miller told Piangenti that Searcy had told him of the lack of success and that "we are go-

[1]. 29 U.S.C.A. § 158(b) (4) (D) provides as follows:

"It shall be an unfair labor practice for a labor organization or its agents * * * to engage in, or to induce or encourage the employees of any employer to engage in, a strike * * * where an object thereof is: * * * forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to em-ployees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *."

[2]. Miller was employed by Tampco Piping, Inc., herein called Tampco, another contractor working at the Monsanto plant.

ing in at noon." At Piangenti's request, Miller agreed to have the operating engineers shut down their equipment in the field and bring in their trucks before punching out. Miller added that it was the "same old story, same old thing." At about 12:30 p. m., the four operating engineers employed by Tampco checked out, and they did not return to work that afternoon.

The next day Tampco notified the National Joint Board for Settlement of Jurisdictional Disputes that the respondent had called a strike against Tampco because of a dispute with Sline over assignment of an operator for the air compressor. On April 9, Chairman Dunlop of the Joint Board directed the International Union of Operating Engineers to instruct respondent to have the employees return to work and either adjust the dispute directly with the Painters or process any complaint in accordance with Joint Board procedures. Dunlop, in the erroneous belief that Tampco was a subcontractor of Sline, requested both Sline and Tampco to send a complete description of the disputed work to the Joint Board. In a later letter Dunlop directed Sline to proceed with the work as originally assigned pending the Joint Board's decision. On May 2, Sline sent the requested description to the Joint Board. On May 6, the Joint Board, having learned for the first time that Tampco was not involved in the dispute, informed the interested parties that, because of the previous misunderstanding, the Operating Engineers, the Electricians, and the affected contractors were being asked whether they wished to present any further statements to the Joint Board before it rendered its decision. Sline did not respond to this letter. On May 10, the Joint Board awarded the disputed work

to respondent. Sline then protested that the Joint Board should not have assumed jurisdiction because Sline had not submitted the dispute to it. Chairman Dunlop replied that the Joint Board decided the dispute "on its own motion," pointing out that no party had objected to the Joint Board's contemplated action when it requested the parties to state their positions.

The unfair labor practice charges filed in April 1957 alleged that respondent had violated Section 8(b) (4) (D), the "jurisdictional disputes" section of the statute. Pursuant to the statutory scheme for the handling of jurisdictional disputes, the Board in July 1957 held the hearing prescribed by Section 10(k) (29 U.S.C.A. § 160(k) to "hear and determine the dispute out of which the charge of a Section 8(b) (4) (D) violation arose.[3]

The Board found, on the basis of the facts set forth, that Sline's assignment of the disputed work to a member of the Painters, was not in contravention of an order or certification of the Board, and that respondent had no contract with Sline that bound Sline to assign the disputed work to its members. The Board also found that the evidence was insufficient to establish that Sline had submitted or acquiesced in the submission of the dispute to the Joint Board or that Sline was bound by the Joint Board's determination. Under these circumstances, the Board found that respondent was not lawfully entitled to force or require Sline to assign the operation of the air compressor to its members rather than to other Sline employees.

Accordingly, the Board directed respondent to notify the Regional Director within 10 days whether it would comply with the Board's determination.

---

**3.** The relevant provisions of Section 10(k) are:

"(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice

shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. * * *" 29 U.S.C.A. § 160(k).

The respondent having refused to comply with the Board's direction, the General Counsel of the Board, on June 3, 1958, issued a complaint alleging a violation of Section 8(b) (4) (D) of the Act. Included in the evidence adduced at the ensuing unfair labor practice hearing were the official records of the prior Section 10(k) proceeding.

Upon the evidence thus adduced, the Board concluded, affirming, the Trial Examiner, that respondent violated Section 8(b) (4) (D) by striking, and inducing employees of Tampco to engage in a strike, with an object of forcing or requiring Sline to assign certain work to members of respondent rather than to other Sline employees.

The Board's order requires respondent to cease and desist from engaging in, or inducing or encouraging the employees of Tampco or any other employer, to engage in a strike, or other proscribed conduct, where an object thereof is to force or require Sline to assign particular work to members of the respondent union rather than to other employees except insofar as such action is permitted under Section 8(b) (4) (D). Affirmatively, the order directs respondent to post appropriate notices and to notify the Board's Regional Director what steps have been taken to comply with the order.

■ Although there are several subsidiary questions raised by respondents, their principal contention is that when such a complaint is filed, charging an unfair labor practice under the jurisdictional strike provisions of the Act, the Board is under the duty under Section 10(k) to consider the claims of the striking union to the work in question (here the right to turn on and off the compressor motor), consider the contention of the other party, here the employer Sline, and decide whether the striking union should be awarded the work or the employer be left free to assign it as he sees fit. This, respondent says, is required by the language of the section that says "the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall

have arisen." The Board, to the contrary, says that it is not required to resolve this dispute, that is, in effect engage in compulsory arbitration as between the parties, but may, as it did here, determine only whether the employer was under contract with respondent requiring him to assign the work to it or whether Sline's assignment of the work to its painter employee was in contravention of an order or certification by the Board.

We agree with the position of the Board, and hold that the failure of the Board to make a decision assigning the task of turning the compressor engine on and off either to the painter employee or to respondent does not invalidate its subsequent proceeding resulting in the complained-of injunction. We arrive at this conclusion with the greatest deference to the views of the Courts of Appeals for the Third, Seventh and Second Circuits, with whose judgments to the contrary we cannot agree. See N. L. R. B. v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Locals 420 and 428, 3 Cir., 242 F.2d 722; N. L. R. B. v. United Brotherhood of Carpenters and Joiners of America, 7 Cir., 261 F.2d 166; and N. L. R. B. v. Radio & Television Broadcast Engineers Union Local 1212, 2 Cir., 272 F.2d 713.

In construing the language of Section 10(k) the first comment we think must be made as to respondent's contention that it is to be construed as setting up a rule of substantive law requiring compulsory arbitration by the Board as between an employer who has exercised his clearly guaranteed right of assigning work to any employee he chooses and a union which simply demands the job for one of its members is that the language is strange language, indeed, to import into the procedural section of the Labor Act such a revolutionary concept. This would mean that whenever an employer is using one of his employees, either skilled or unskilled, to perform a job (even though it be one requiring only *one minute* a day as was true here) and a labor

organization wishes to compel him to hire one of its members to perform the job it can, notwithstanding the clear substantive declaration of Section 8(b) (4) (D) that it is an unfair labor practice for such union to "strike * * * where an object thereof is * * * forcing or requiring any employer to assign particular work to" its employees, go out on strike, force a Section 10(k) hearing and require the Board to settle "the dispute," i. e., decide whether it or the employer should be entitled to assign an employee to the job.

Such a construction being utterly inconsistent with the entire purpose of the substantive provisions of the law, we think that the language should not be so construed unless no other reasonable construction can be made. The Board has construed this provision to mean that where there has been an assignment of the work in question by an employer, the Board's "determination of the dispute" is complete when it ascertains whether such an assignment by the employer is in violation of a contract by which the employer is bound or is in contravention of an order or certification of the Board. In view of the language of Section 8(b) (4) (D), which prevents such a strike from being an unfair labor practice if "such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work," and in view of the fact that a breach of a contract to permit the striking union to assign an employee to the job might arguably prevent the strike from being an unfair labor practice, it seems clear that the ascertainment whether the employer was in violation of a contract, or in contravention of an order or certification of the Board is comprehended in the terms "determine the dispute." We therefore think that the finding made here by the Board to the effect that Sline's assignment of the work to the painters was not in contravention of an order or certification of the Board, and that respondent had no contract with Sline that bound Sline to as-

sign the work to its members was a determination of "the dispute out of which such unfair labor practice [arose]."

In the first of the cases construing Section 10(k) as requiring compulsory arbitration, the court recognized that such construction may make the section "seem anomalous" when considered in the light of the clear prohibition of Section 8(a) (3) of the Act. See N. L. R. B. v. United Association of Journeymen, 3 Cir., 242 F.2d 722, 727, where the court said:

> "Moreover, we do not believe that the plain requirement of Section 10 (k) should be disregarded *even though another provision of the statute may make it seem anomalous.*" (Emphasis added.)

With deference, we do not consider the plain meaning of Section 10(k) to be as there held by the court; thus we think the fact that the construction given to it brings it in conflict with other provisions of the statute is strongly persuasive of the need for finding a different meaning for the words. We think this is even clearer because Section 8(b) (4) (D) and Section 8(a) (3) are substantive sections clearly outlining what shall be considered to be unfair labor practices, whereas everything in Section 10 is procedural in nature. It would be extremely strange if what the act proscribed in Section 8 as an unfair labor practice should be made to lose its illegal character by proceedings designed in Section 10 to provide means for calling sanctions into play.

We note that the Supreme Court in International Longshoremen's and Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, at page 243, 72 S.Ct. 235, at page 239, 96 L.Ed. 275, says:

> "Section 8(b) (4) (D) and § 303 (a) (4) are substantially identical in the conduct condemned. Section 8(b) (4) (D) gives rise to an administrative finding; § 303(a) (4) to a judgment for damages."

Yet the Supreme Court expressly in that case ruled that a suit for damages for

the very kind of strike as was charged here can be maintained without any Section 10(k) hearing. This is strongly persuasive, we think, that the requirements of 10(k) are purely procedural, for it seems highly unlikely that Congress would enact a statute permitting an aggrieved person to sue for damages for a jurisdictional strike, with the quality of the strike finally and irrevocably fixed without any Board determination, and at the same time provide that the same strike would no longer be an unfair labor practice as a basis for seeking injunction if the Board, acting as arbitrator assigned the work to the striking union. Under such a construction the work would have been assigned by the Board to the striking union and no violation of 8(b) (4) (D) would exist, but the employer would still have his right to sue for damages because the strike would still be a violation of 303(a) (4). We conclude that Congress did not intend such an anomaly. We agree with the Court of Appeals for the Ninth Circuit which said:

"Under the plain language of Section 8(b) (4) (D) we are unable to see how the Board in a Section 10 (k) proceeding could make a determination adverse to the assignment of the work by [the employer]." International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 9 Cir., 189 F.2d 177, 188.

We conclude that where, as here, an employer has assigned work to an employee and a labor organization does any of the acts proscribed by Section 8(b) (4) (D), the Board is not required, as a part of its determination of the dispute, to make an adjudication as between the employer and the labor organization assigning the work to one or the other as a prerequisite to the granting of 10(c) relief by the Board. This is consistent with the Board's unvarying construction of the statute and is the only construction which in our opinion does not undercut the clearly expressed purpose of the statute to outlaw and eliminate jurisdic-

tional strikes. United Brotherhood of Carpenters, 98 N.L.R.B. 346, 349-350; Los Angeles Building Trades Council, 83 N.L.R.B. 477; International Longshoremen's Union, 82 N.L.R.B. 650, 659-660.

█ As to the subsidiary questions, we are fully satisfied that the evidence supported the findings of the Board that the proscribed acts did occur and that there was no consent by Sline to submit the jurisdictional dispute to the Joint Board with authority to settle it.

█ Moreover, the Board did not err in failing to permit the introduction of additional evidence at the Section 8(b) (4) (D) hearing on the fact issues decided at the 10(k) proceeding. For a further discussion of this point see the companion case decided contemporaneously herewith, 5 Cir., 275 F.2d 420.

Petition for enforcement is granted.

Order enforced.