**NATIONAL LABOR RELATIONS BOARD, Petitioner (Industrial Painters & Sandblasters—Employer)**

v.

**LOCAL 450, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.**

**No. 17800.**

United States Court of Appeals Fifth Circuit.

Feb. 18, 1960.

Rehearing Denied April 14, 1960.

Melvin J. Welles, Atty., Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Warner F. Brock, Houston, Tex., for respondent.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is a companion case to N. L. R. B. v. Local 450, International Union of Operating Engineers, AFL-CIO, 5 Cir., 275 F.2d 408. The Board and the respondent are here litigating with respect to somewhat similar activities of the same union on a different job site than that in the earlier case. The statement of the case by the Board, which respondent, with commendable candor, agrees is substantially correct, follows:

Briefly, the Board found that respondent, in violation of Section 8(b) (4) (D) of the Act, 29 U.S.C.A. § 158(b) (4) (D), induced and encouraged employees of Industrial to engage in a strike to force Industrial to assign certain work to members of respondent rather than to other Industrial employees. In this connection the Board found that respondent had neither a contractual claim to the work in question, nor a Board order or certification granting it representative rights with respect to the work tasks involved. The Board based its findings upon the following subsidiary facts.

About September 6, 1954, Industrial began painting oil tanks for Cities Service Oil Company. In performing this work, Industrial used four air compressors, all automatic except that they had

to be started and stopped manually. Industrial did not assign the actual starting and stopping operation to any particular employee or employees; whoever was closest to the compressor performed this function. Industrial's normal work force consisted of laborers and union painters.

The day after the work for Cities Service began, Earl Ford, respondent's business representative, asked Isaac Vincent, Industrial's superintendent, to employ one member of respondent to operate each compressor. Vincent agreed to hire one employee to perform the starting and stopping operations on all four compressors. The next day, an operating engineer, Clifford Fleming, reported to do this work.

Fleming worked all that day, and until 4:30 p. m., the end of the regular 8-hour work day, on September 9. Industrial's other employees worked until 7 p. m. both days, were paid overtime, and the compressors were shut off by them. After Fleming complained to Ford that he was not getting overtime like the other men, Ford demanded that Industrial hire an additional man to operate the compressors and that Industrial pay Fleming overtime. Ford also asked Industrial to bank the compressors in pairs and hire a member of respondent for each pair. When Industrial refused these requests, respondent, on September 10, began picketing Industrial with signs reading "Local 450, Operating Engineers, in dispute with Industrial Painters and Sand Blasters." A few days later, Ford reiterated his demands that Industrial hire one workman for each compressor and pay Fleming overtime.

The picketing continued for about 3 weeks, and no work was performed at the Fauna site during this period.

The unfair labor practice charges filed in September 1954 alleged that respondent had violated Section 8(b) (4) (D), the "jurisdictional disputes" section of the statute. Pursuant to the statutory scheme for the handling of jurisdictional disputes, the Board in November 1954 and October 1955 held the hearing prescribed by Section 10(k) to "hear and determine the dispute" out of which the charge of a Section 8(b) (4) (D) violation arose.

The Board found, on the basis of the facts set forth, that Industrial's assignment of the work to its employees, who were not members of respondent, was not in contravention of an order or certification of the Board, and that respondent had no contract binding Industrial to assign the disputed work to its members. Under these circumstances the Board found that respondent was not lawfully entitled to force or require Industrial to assign the disputed work to its members rather than to other Industrial employees.

Accordingly, the Board directed respondent to notify the Regional Director within ten days whether they would comply with the Board's determination.

Respondent having refused to comply with the Board's decision, the General Counsel of the Board, on April 27, 1956, issued a complaint alleging a violation of Section 8(b) (4) (D) of the Act. Included in the evidence adduced at the ensuing unfair labor practice hearing were the official records of the prior Section 10(k) proceeding.

Upon the evidence thus adduced, the Board concluded, affirming the Trial Examiner, that respondent violated Section 8(b) (4) (D) by "inducing and encouraging the employees of Industrial Painters to engage in a strike or a concerted refusal * * * to perform services with an object of forcing or requiring Industrial Painters to assign the work on its air compressors to the Respondent's members rather than to Industrial Painters' own employees who are not members of that labor organization * * *."

The Board's order requires respondent to cease and desist from inducing and encouraging the employees of Industrial Painters to engage in a strike or other indicated conduct, where an object thereof is to force or require Industrial to assign particular work to

members of the respondent union rather than to other employees. Affirmatively, the order directs respondent to post appropriate notices and to notify the Board's Regional Director what steps have been taken to comply with the order.

■ Here, as in the companion case, the principal contention by respondent is that the Section 10(k) hearing did not comply with the requirements of the statute in that the Board did not arbitrate the dispute and assign the work of starting and stopping the compressors to either the respondent or to Industrial's employees. For the reasons stated in that case we hold that this argument is not sound.

■ The further contention is made here that the strike was not a jurisdictional strike at all but was a strike to protest the refusal of the employer to give overtime work to Fleming to enable him to stay on the job two and a half hours longer to shut the motors off. We think this is a fact issue and that it has been resolved on a full record by the Board which said:

"The real crux of this dispute, in our opinion, is this insistence by the Respondent that the Employer assign a member of that Union on a full-time basis to a function that had been performed by the Employer's own laborers on the basis of less than 30 minutes a day."

The fact that Industrial had voluntarily agreed to hire one member of respondent's union to perform this brief task does not change the fact that the strike was for the purpose of coercing Industrial to hire additional members of Local 450 to perform the duties that were still being done by other employees of Industrial. We think the language of the Fourth Circuit case, N. L. R. B. v. Local Union No. 9, Wood, Wire & Metal Lathers Union, 4 Cir., 255 F.2d 649, 652, is apposite:

"An effort to recast the controversy into a different form does not change its substance."

■ Respondent next contends that the Board erred in not permitting the charge to be dropped at the voluntary request of Industrial, the charging party. The General Counsel of the Board opposed the dismissal by the Trial Examiner, and the Board approved the action of the Examiner in denying the motion to dismiss. The Board said:

"It is well settled that a private settlement is not binding on the Board where not consonant with the public interest. Nor does it render the dispute moot. See Local 74, United Broth. of Carpenters & Joiners of America, A. F. of L. v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309; N. L. R. B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 567–568, 70 S.Ct. 833, 94 L.Ed. 1067; N. L. R. B. v. Pool Mfg. Co., 339 U.S. 577, 70 S.Ct. 830, 94 L.Ed. 1077; United Ass'n of Journeymen, etc., 115 N.L.R.B. No. 223."

We cannot hold that the Board erred in not giving effect to the private settlement in a matter in which it was within the province of the Board to find that the public interest was opposed to such disposition of the proceeding.

■ Finally, respondent complains about the scope of the order of the Board asserting that it deprives respondent of sufficient knowledge of the acts which are prohibited. The Board made the following finding in this respect:

"On the basis of evidence adduced at the hearing in the proceeding conducted pursuant to Section 10(k) of the Act in Case No. 39-CD-14, and summarized by the Trial Examiner in the Intermediate Report, it appears that the Respondent has on several occasions in the past committed violations of the Act similar to the unfair labor practices herein, but involving employers other than W. J. Hedrick and H. W. Marschall, Jr., d/b/a Industrial Painters and Sandblasters. Moreover, it appears that the Respondent is likely to continue to commit such viola-

tions when situations similar to those in the instant case occur within its territorial jurisdiction. Accordingly, we shall modify the Trial Examiner's recommended cease and desist order, which we otherwise adopt in its entirety, by enlarging its scope so as to enjoin the Respondent from the commission of similar illegal actions not only with respect to the Company, but also with reference to any other employers."

Although the Board in its conclusion used the word "enjoin," it effectuated its conclusion in its cease and desist order. Of course, only the Court has the power to issue an injunction. We recognize that in the use of this word the Board was not speaking in a technical sense. It enlarged the order to cause respondent "to cease and desist from inducing and encouraging the employees of Industrial Painters *or any other employer* to engage in a strike or a concerted refusal, etc."[1] This order is in all respects similar to those made by the Board in the other Local 450 case just decided, as to the terms of which no objection was made by the Union. We think the finding by the Board that respondent had committed several similar violations and that it was likely it would do so in the future is fully justified on the record and by the evidence of these three violations with which we are here dealing. We think that the terms of the injunction are fully justified in light of these circumstances. See N. L. R. B. v. United Mine Workers of America, Dist. 31, and Locals Nos. 4050, 4346, 1379, 2338, 4047 and 8327, 4 Cir., 198 F.2d 389. And cf.

Central State Drivers Council v. N. L. R. B., 105 U.S.App.D.C. 338, 267 F.2d 166, certiorari denied 361 U.S. 833, 80 S.Ct. 85, 4 L.Ed.2d 75, rehearing denied 80 S.Ct. 366.

The petition for enforcement of the order is granted.

Order enforced.

CAMERON, Circuit Judge (concurring in part and in part dissenting).

I concur in the enforcement of the Board's order insofar as it relates to the issues raised by the pleadings and to the parties before the Board and before us; and in the opinion of the majority, except to the extent that it approves the finding of the Board justifying the application of the cease and desist order to "any other employers" with whom Respondent might deal. Specifically, I dissent from these findings of the Board now approved by the majority opinion which are italicized in the following quotation:

"Accordingly, we shall modify the Trial Examiner's recommended cease and desist order, which we otherwise adopt in its entirety, *by enlarging its scope so as to enjoin the Respondent from the commission of similar illegal actions* not only with respect to the Company, *but also with reference to any other employers.*"

I would first question the use of the word "enjoin" in the findings of the Labor Board. The word "enjoin" has historically a definite and well understood meaning in legal parlance.[1] In former

---

1. The entire paragraph of the order complained of follows:

"1. Cease and desist from inducing and encouraging the employees of Industrial Painters or any other employer to engage in a strike or a concerted refusal in the course of their employment to perform services, where an object thereof is to force or require Industrial Painters or any other employer to assign its air compressor work to Respondent's members rather than to its own employees who are not members of that labor organization, unless and until Respondent

is certified by the Board as the bargaining representative of the employees performing such work."

1. I do not find in the record any justification for the majority's assumption that the Board did not use the word in a "technical" sense. Certainly nothing in the history of the actions of these newly-born administrative agencies gives substance to the notion that they are imbued in any sense by reticence or reluctance as they have assayed and applied their powers. The word was used in a

times its use evoked a spontaneous feeling of respect, even reverence. It is difficult to envisage the extent of the dilution of that veneration by the profligate issuance of ill-considered injunctions which has taken place in recent years if the word is now to be permitted to find its way into the orders of administrative agencies, creatures of statute and possessing only closely circumscribed powers.

The error in the majority opinion, as I see it, runs deeper. The proceedings before the Board were set in motion [2] by two charges brought under 29 U.S. C.A. § 160(b), signed by agents of Industrial Painters and Sandblasters based upon specified and dated alleged violations by Respondent of § 8(b) (4) (D) of the National Labor Relations Act. These charges were consolidated and made the basis of a complaint [3] filed by a Regional Director of the Board which alleged that Respondent was guilty of unfair labor practices under said section of the Act in its relationship with the employer, Industrial Painters. This complaint was answered by Respondent and the issues were thus framed upon which the hearing before the Board was conducted. The findings of the Board above quoted were used by it in arriving at its order requiring Respondent to "Cease and desist from inducing and encouraging the employees of Industrial Painters or any other employer to engage in a strike * * * "

The majority opinion approves the findings and the entry of this "Mother Hubbard" order upon which this Court will enter a judgment whose violation will be punishable as a contempt of court. The injunctive power is an important component of the judicial process, but it is a delicate power, one which should be exercised sparingly and with caution.[4] The limitations attending its exercise, based in great part upon Supreme Court decisions,[5] are well expressed in 28 American Jurisprudence, Injunctions, § 300, pp. 472–473:

"An injunction should conform to the requirements of equity decrees generally. The relief should run only against those who are parties and are properly before the court and should not attempt to bind persons who are not named or served as defendants and who are not

---

legal document and no presumption can be indulged except that the Board intended to invest it with the meaning which the law gives it.

2. Cf. National Labor Relations Board v. Fant Milling Co., 1959, 360 U.S. 301, 307, 79 S.Ct. 1179, 3 L.Ed.2d 1243.

3. As authorized under 29 U.S.C.A. § 160 (b).

4. "The power to issue injunctions should be exercised with great caution and only where the reason and necessity therefor are clearly established." 43 C.J.S. Injunctions § 15, p. 426.

5. Inter Alia, Chase National Bank v. City of Norwalk, 1934, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894; Scott v. Donald, 1897, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648; Allen v. Pullman Palace Car Co., 1891, 139 U.S. 658, 11 S.Ct. 682, 35 L.Ed. 303; State of Wyoming v. State of Colorado, 1932, 286 U.S. 494, 52 S.Ct. 621, 76 L. Ed. 1245; New York, N. H. & H. R. Co.

v. Interstate Commerce Commission, 1906, 200 U.S. 361, 26 S.Ct. 272, 50 L. Ed. 515; Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L. Ed. 518, and State of Wisconsin v. State of Illinois, 1929, 278 U.S. 367, 49 S.Ct. 163, 73 L.Ed. 426.

The principles have been applied in cases arising under the Act before us. National Labor Relations Board v. Cheney Cal. Lumber Co., 1946, 327 U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739; May Department Stores v. National Labor Relations Board, 1945, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; National Labor Relations Board v. Express Publishing Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930. National Labor Relations Board v. Dallas General Drivers, 5 Cir., 1956, 228 F.2d 702, Truck Drivers and Helpers Local Union No. 728 v. National Labor Relations Board, 5 Cir., 1959, 265 F.2d 439, 444; and National Labor Relations Board v. Local 926 International Union of Operating Engineers, Etc., 5 Cir., 1959, 267 F.2d 418.

brought within the court's jurisdiction. * * *

"The decree should conform to and be supported by the pleadings, proof, and findings, and should conform to the requirements of the particular case, so as not to go beyond such requirements or be broader or more extensive than the case warrants. If the wrongs complained of and against which injunctive relief is sought are alleged violations of a statute in certain particulars, the decree may restrain the defendant from further like violations of the act, but should not enjoin in general terms violations of the act in the future in any particular, because an injunction of such general character would be violative of the elementary principles of justice, in that it would compel the defendant thereafter to conduct himself and his business under the jeopardy of punishment for contempt for violating a general injunction. * * * "

As based upon the facts in this record, I think the majority opinion goes beyond the issues raised by the pleadings, approves an order whose impact would extend to persons not before the Court [6] and places Respondent in a strait jacket, greatly restricting its ability to deal with other employers at other times and places and under other conditions in the indefinite future. What the majority here does is in effect to import into a proceeding to which it is inapplicable the mechanism of class actions—a contrivance at best fraught with high potentialities of injustice unless utilized under the limitations with which it is normally surrounded.[7] In fact, it is not unlike the issuance of a peace bond with all the world as obligee, against a litigant who has been engaged in three or four fights.

It is the genius of this government that every citizen, individual, labor union or corporation shall have unlimited access to any and every tribunal and as often as may be thought proper to assert his contentions as to what under the law are his just rights; and to make every effort to get the law, whether made by legislature or courts, changed to conform to his ideas of what is just and proper. I would not enforce the portion of the order here discussed.

6. This is so for the reason that every other employer of Respondent's members could, without a Board hearing, induce contempt proceedings to be begun against them upon alleged violation of the judgment which will be entered enforcing the order before us. Moreover, if class action techniques are applicable,—and I do not see any other possible justification for approving the Board's broad order—res judicata would apply to all other employers whether, in such a proceeding as this, the Board's order should be in favor of or against the union. Cf. Smith v. Swormstedt, 16 How. 288, 57 U.S. 288, 302, 14 L.Ed. 942; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 363 et seq., 41 S.Ct. 338, 65 L.Ed. 673; and 3 Moore's Federal Practice, 2d Ed. pp. 3456 et seq. and 3470 et seq.

The majority opinion calls attention to the fact that the order here approved is in all respects similar to those made in two other cases this day decided. The facts of this case and the contentions of Respondent, in my opinion, present a quite different proposition from the others. In addition to what has been said above, it is important to note that, in this case, one of Respondent's members was employed to operate the compressors and the controversy centered around overtime claimed in his behalf and Respondent's efforts to increase the number of its members to be assigned to the work. I think the position taken by the Respondent with respect to the portion of the Board's order above discussed makes a different case and I do not think what I have said above is in conflict with the decisions in the other two cases.

7. Cf. Rule 23, F.R.Civ.P., 28 U.S.C.A.